SNOW JENSEN & REECE, P.C.
J. Gregory Hardman [8200]
Jeffrey R. Miles [14258]
Sean J. Romney [16328]
Tonaquint Business Park
912 West 1600 South, Suite B-200
St. George, UT 84771-2747
Telephone: (435)628-3688
Facsimile: (435)628-3275
ghardman@snowjensen.com
jmiles@snowjensen.com
sromney@snowjensen.com
*Attorneys for Plaintiffs, Travis Lynn Shumway, Chad L. Shumway, Mountain West Medical
Supply, LLC, United Energy Workers Healthcare, Corp., Four Corners Health Care Corp. and
Four Corners Healthcare, Inc.*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION.

| | |
|---|---|
| TRAVIS LYNN SHUMWAY, an individual residing in the state of Utah; CHAD L. SHUMWAY, an individual residing in the state of Utah; MOUNTAIN WEST MEDICAL SUPPLY, L.L.C., a Utah limited liability company; UNITED ENERGY WORKERS HEALTHCARE, CORP., an Ohio corporation; FOUR CORNERS HEALTH CARE CORP., a Utah corporation; and FOUR CORNERS HEALTHCARE INC., a Wyoming corporation; | **EXPEDITED**<br><br>**COMPLAINT**<br><br>**AND**<br><br>**JURY DEMAND** |
| Plaintiffs, | **FILED UNDER SEAL** |
| vs. | Case No.: |
| JAMES LINN WRIGHT, an individual; AUDRA WRIGHT, an individual; GARY D. SLAVENS, an individual; JANE AND JOHN DOES 1-10; and DOE BUSINESS ENTITIES 1-10; | Honorable Judge _____ |
| Defendants. | |

## COMPLAINT

Plaintiffs Travis Lynn Shumway, Chad L. Shumway, Mountain West Medical Supply L.L.C., United Energy Workers Healthcare, Corp., Four Corners Health Care Corp., and Four Corners Healthcare, Inc. (collectively "Shumways" or "Plaintiffs"), by and through their counsel of record, J. Gregory Hardman, Jeffrey R. Miles, Sean J. Romney, and Snow Jensen & Reece, P.C., hereby complain against Defendants James Linn Wright, Audra Wright, Gary D. Slavens, Jane and John Does 1-10, and Doe Business Entities 1-10 and allege as follows:

## PARTIES

1.      Plaintiff Travis Lynn Shumway ("Travis Shumway") is an individual residing in San Juan County, Utah.

2.      Plaintiff Chad L. Shumway ("Chad Shumway") is an individual residing in Utah County, Utah.

3.      Plaintiff Mountain West Medical Supply L.L.C. ("Mountain West Medical Supply") is a Utah limited liability company headquartered in San Juan County, Utah.

4.      Plaintiff United Energy Workers Healthcare, Corp. ("United Energy Workers") is an Ohio corporation headquartered in Hamilton County, Ohio.

5.      Plaintiff Four Corners Health Care Corp. ("Four Corners Utah") is a Utah corporation headquartered in San Juan County, Utah.

6.      Plaintiff Four Corners Healthcare, Inc. ("Four Corners Wyoming") is a Wyoming corporation headquartered in Fremont County, Wyoming.

7.      Defendant James Linn Wright ("Linn Wright") is an individual residing in Utah County, Utah.

8.      Defendant Audra Wright ("Audra Wright") is an individual residing in Utah County, Utah. Linn Wright and Audra Wright are husband and wife.

9.      Defendant Gary D. Slavens ("Gary Slavens") is an individual residing in Utah County, Utah.

10.     Defendants Jane and John Does 1-10 and Doe Business Entities 1-10, on information and belief, are businesses, persons, partners, agents, or associates of Defendants Linn Wright, Audra Wright and Gary Slavens, who participated in the acts hereafter alleged, and who later may be specifically identified as parties herein.

## JURISDICTION AND VENUE

11.     This is a civil action for violation of the Federal Defend Trade Secrets Act (18 U.S.C. §§ 1836 et seq.), the Utah Uniform Trade Secrets Act (Utah Code Ann. §§ 13-24-1 et seq.), breach of contract, unjust enrichment, civil conspiracy and imposition of a constructive trust.

12.     This Court has original jurisdiction over the federal trade secret claims under 28 U.S.C. § 1331. The state law claims asserted herein are so related to those claims over which this Court has original jurisdiction as to form part of the same case or controversy. This Court therefore has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related common law and state law claims asserted herein.

13.      Defendants Linn Wright, Audra Wright, and Gary Slavens are subject to personal jurisdiction in this judicial district because they reside within this judicial district and the underlying wrongful conduct, including trade secret misappropriations, civil conspiracy, and other related claims occurred in this judicial district.

14.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because substantially all of the acts and subject matter on which the claims are based occurred in this judicial district and Linn Wright, Audra Wright, and Gary Slavens either reside or are found within this judicial district.

## BACKGROUND

15.      Four Corners Utah is in the business of providing home health care to beneficiaries of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA") and the Radiation Exposure Compensation Act ("RECA").  EEOICPA and RECA are administered by the U.S. Department of Labor and Four Corners Utah is a registered provider of home health care services.

16.      Four Corners Wyoming is also in the business of providing home health care to beneficiaries of the EEOICPA and RECA and is also a registered provider of home health care services by the U.S. Department of Labor.

17.      United Energy Workers is also in the business of providing home health care to beneficiaries of the EEOICPA and RECA and is also a registered provider of home health care services by the U.S. Department of Labor.

18.     Mountain West Medical Supply is in the business of providing durable medical goods and equipment ("DME") to home health care recipients.  Mountain West Medical Supply provides DME to most patients of Four Corners Utah, Four Corners Wyoming and United Energy Workers who are eligible to receive DME as a part of their approved compliment of medical care services.

19.     Travis Shumway and Chad Shumway are also the sole owners of Mountain West Medical Supply.

20.     Travis Shumway and Chad Shumway are the sole owners of Four Corners Utah.

21.     Travis Shumway and John Falls are the sole owners of Four Corners Wyoming.

22.     Travis Shumway, Chad Shumway and John Falls are the sole owners of United Energy Workers.

23.     The EEOICPA was enacted in October 2000.  Part B of the EEOICPA, effective on July 31, 2001, compensates current or former employees (or their survivors) of the U.S. Department of Energy, its predecessor agencies, and certain of its vendors, contractors and subcontractors, who were diagnosed with a radiogenic cancer, chronic beryllium diseases, beryllium sensitivity, or chronic silicosis, as a result of exposure to radiation, beryllium, or silica while employed at covered facilities.  The EEOICPA also provides compensation to individuals (or their eligible survivors) awarded benefits by the Department of Justice under Section 5 of RECA.  Part E of the EEOICPA, enacted October 28, 2004, compensates U.S. Department of Energy contractor and subcontractor employees, eligible survivors of such employees, and uranium miners, millers, and ore transporters as defined by RECA Section 5, for any

occupational illnesses that are causally linked to toxic exposures in the U.S. Department of Energy or mining work environment.

24.     Implementation of the EEOICPA involves the coordinated efforts of four federal agencies: the U.S. Department of Labor, the U.S. Department of Energy, the U.S. Department of Justice, and the U.S. Department of Health and Human Services. The U.S. Department of Labor has primary responsibility for administering the EEOICPA, including adjudication of claims for compensation and payment of benefits for conditions covered by Parts B and E.

25.     Travis Shumway organized Four Corners Utah in or about October 2009, and several months later, Chad Shumway became a co-owner of the company.

26.     Travis Shumway and Chad Shumway organized Mountain West Medical Supply on or about June 1, 2011.

27.     Travis Shumway and John Falls organized Four Corners Wyoming in or about June 2011.

28.     Travis Shumway, Chad Shumway and John Falls organized United Energy Workers in or about September 2013.

29.     Together, Four Corners Utah, Four Corners Wyoming and United Energy Workers comprise one of the largest home health care agencies for EEOICPA and RECA beneficiaries, and collectively operate throughout all regions of the United States.

30.     Successful home health care companies serving eligible EEOICPA and RECA beneficiaries must expend substantial upfront sums of money and amounts of time to locate and qualify patients.  Marketing efforts include mass mailings, direct mailings, online website and

door-to-door contacting in communities thought to have substantial concentrations of potential beneficiaries.

31.     Furthermore, potential EEOICPA and RECA beneficiaries must be qualified for eligibility by the U.S. Department of Labor.  Among other criteria, a home health care agency seeking to qualify the potential beneficiary (patient) must arrange for the person to receive a medical screening exam from a licensed medical doctor and hire a nurse to prepare a plan of care report.  The physician's exam results and plan of care report are then submitted by the home health care agency to the U.S. Department of Labor.  If the potential beneficiary (patient) is deemed eligible for medical service benefits, the U.S. Department of Labor issues an authorization letter and the home health care agency may thereafter begin providing a particular compliment of medical care services by contracting with licensed medical care providers (i.e., registered nurses, certified nurse assistants, physician assistants, therapists, etc.) at privately agreed-upon rates.

32.     Providing home health care to beneficiaries of EEOICPA and RECA is highly competitive. Thus, any information known to a business in this field that is not readily ascertainable and gives an advantage to acquiring or generating patients and is very valuable.

33.     Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers were among the first home health care agencies providing services to patients under EEOICPA and are among the largest such businesses nationally.  Consequently, the generation of patient lists for Four Corners Utah, Four Corners Wyoming and United Energy Workers constitute unique proprietary and confidential information.

34.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' proprietary, confidential information and trade secrets are extremely valuable to Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers.

35.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers have taken great care to protect and maintain the secrecy of their confidential and proprietary information, including by, among other things, requiring all employees and other business associates to enter into confidentiality, non-disclosure and non-solicitation agreements, protecting access to company systems by requiring passwords for access, and limiting access to confidential information and company systems to select trusted persons within the companies.

36.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers have invested large amounts of time and resources, including millions of dollars, into developing their proprietary systems and methods for developing patients, which include valuable proprietary confidential information and trade secrets, including, without limitation, market demographics research; backend parameters for social media and other online marketing platforms and methods not readily ascertainable by the public; web interface information for Four Corners Utah, Four Corners Wyoming and United Energy Workers' websites and platforms; proprietary empirical trial and error data/information developed through experimentation and fine tuning of patient generation systems; business, customer, medical care provider and vendor information and relationships; and other proprietary, confidential

information and trade secrets, which are not publicly available or readily ascertainable by the public.

37.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' proprietary confidential information and trade secrets provide them a tremendous advantage over competitors with respect to their ability to generate large numbers of high-quality patients.

38.    In the early years of their business operations, Travis Shumway and Chad Shumway personally secured many of their companies' patients through direct door-to-door contacts, living for extended periods of time on the road in various regions of the United States.

39.    Four Corners Utah and Four Corners Wyoming were among the first home health care agencies serving EEOICPA and RECA beneficiaries within their target regions, which for Four Corners Utah were the states of Utah, Colorado, New Mexico and Arizona and for Four Corners Wyoming was the state of Wyoming.

40.    Four Corners Utah became a highly successful and profitable company within two years of commencing business operations. Given the success of this company, Travis Shumway, Chad Shumway and John Falls decided to organize United Energy Workers, which they intended to operate throughout the United States. Today, United Energy Workers treats patients nationwide and has office locations in more than twenty states.

## GENERAL ALLEGATIONS

### Formation of the MIPA, the MIPA Litigation, and Settlement of the Prior Litigation

41.    The Shumways decided to hire Linn Wright to help manage Mountain West Medical Supply.

42.    Linn Wright promoted himself to the Shumways as having considerable prior experience in the successful operations of home health care agencies, including the proper billing of Medicare and private insurance companies for such services.

43.    Linn Wright wanted an ownership interest in Mountain West Medical Supply as a condition of associating with the Shumways, so the Shumways agreed to make Linn Wright a minority owner of Mountain West Medical Supply.

44.    On or about February 15, 2012, the Shumways and Linn Wright entered into that certain Operating Agreement of Mountain West Medical Supply, LLC, whereby Travis Shumway became a thirty-five percent (35%) owner, Chad Shumway became a thirty-five percent (35%) owner, and Linn Wright became a thirty percent (30%) owner.

45.    During the ensuing months, the Shumways realized Linn Wright had overstated his prior experience and qualifications and, more importantly, the parties' business goals became more and more divergent. The Shumways wanted to reinvest company profits to grow Mountain West Medical Supply and Linn Wright constantly wanted to take dividends.

46.    Eventually, the Shumways and Linn Wright decided to part ways. On or about March 12, 2013, the Shumways and Linn Wright entered into that certain Agreement for Purchase and Sale of Limited Liability Company Membership Interest ("MIPA"). A true and correct copy of the MIPA is attached hereto as **Exhibit 1** and incorporated herein by reference.

47.    The MIPA provided that Linn Wright would sell his thirty percent (30%) interest in Mountain West Medical Supply, one-half to each of the Shumways, for $550,000. Section 7(i) of the MIPA provided that $300,000 of the purchase price was to be paid at closing and the

balance of $250,000 was to be paid over eighteen months.  However, Section 7(ii) qualified the payment of the purchase price as follows:

> Seller agrees to share in the risk of the uncontrolled circumstances of any fluctuation of loss to be reflected on his pay out [sic] at a percent equal to that percent of change that will be reimbursed.  Which [sic] may include but not eliminate such things such as loss of life of patients, change in the DOL reimbursement rate.  At [sic] which times a percentage shall be taken out according to the difference of the percentage of change by the initial buyout total.

48.    In Section 8.01 of the MIPA, Linn Wright acknowledged that by virtue of his affiliation with Mountain West Medical Supply and Four Corners Utah he had access to confidential and proprietary information of both companies.

49.    In Section 8.03 of the MIPA, Linn Wright covenanted that he would not "disclose, directly or indirectly to any person except authorized representatives of [the Shumways], the names, addresses or telephone numbers of, or any other information regarding, any present or past customer, client or account of the Company, nor shall [Linn Wright] divulge other confidential information concerning the Company's business."

50.    Under Section 8.04 of the MIPA, Linn Wright covenanted that he would not "directly or indirectly contact any past, present or future clients of contractors of the Company for the purposes of selling, marketing or offering his services whether directly or indirectly without prior written authorization or approval from [the Shumways]."

51.    Under Section 8.06 of the MIPA, Linn Wright covenanted that he would "pay for any and all attorney fees and costs associated with [the Shumways'] enforcement of the confidentiality and non-compete provision of this Agreement . . . and liquidated damages . . . in the amount of 150% of [the] purchase price."

52.     The Shumways and Linn Wright signed the MIPA, following which the
Shumways paid $300,000 to Linn Wright.

53.     Audra Wright executed that certain "Consent of Spouse," dated March 12, 2013,
Exhibit B to the MIPA, in which she acknowledged having read, understanding and agreeing to
all terms and conditions of the MIPA.

54.     Approximately five or six months later, the U.S. Department of Labor modified
the reimbursement rate to home health care agencies treating EEOICPA patient beneficiaries,
which occurrence justified the Shumways in reducing the amount of payments to Linn Wright
under the MIPA.

55.     Unbeknownst to the Shumways, in roughly April of 2014, Linn Wright attempted
to assign his right to payments for the balance of the purchase price under the MIPA to an
unrelated party named Blair Schmoekel in an effort to compromise and settle an antecedent debt.

56.     Both of these occurrences—modifications in U.S. Department of Labor
reimbursement rates and Linn Wright's failure to abide the terms of the MIPA—justified the
Shumways in reducing the amount of payments to Linn Wright for the balance of the purchase
price, which, in turn, decreased the amounts Linn Wright was able to pay to Blair Schmoekel to
settle Linn Wright's antecedent debt.

57.     In or about late April 2014, Blair Schmoekel demanded the full unmitigated
balance of the purchase price under the MIPA from the Shumways.  The Shumways rejected
Blair Schmoekel's demand, citing Linn Wright's non-performance and the qualified payment
terms of the MIPA.

58.     On or about May 21, 2014, Blair Schmoekel filed a lawsuit against Travis Shumway, Chad Shumway and Four Corners Utah in the Seventh Judicial District Court in and for San Juan County, Utah, civil number 14700006 (the "MIPA Litigation").  In response, the Shumways filed an answer and counterclaim against Blair Schmoekel and Linn Wright in the MIPA Litigation.  Mountain West Medical Supply also filed a separate lawsuit against Linn Wright and his brother-in-law, Seth Clayton, in the Fourth Judicial District Court in and for Utah County, Utah, civil number 149700043, which action sought to recover $25,000 that Linn Wright had paid to Seth Clayton from funds owned by Mountain West Medical Supply (the "Wright/Clayton Litigation").  The MIPA Litigation and the Wright/Clayton Litigation are collectively referred to as the "Prior Litigation."

59.     Approximately six months later, Linn Wright, Travis Shumway, Chad Shumway, Mountain West Medical Supply, Seth Clayton and Blair Schmoekel settled the Prior Litigation.

60.     Settlement of the Prior Litigation was finally accomplished during mediation conducted on September 22-23, 2014 in St. George, Utah.  However, during mediation, Linn Wright disclosed that he had in his possession a printout of the patients of Mountain West Medical Supply.  Due to the association between Mountain West Medical Supply and the Shumways' other companies, namely, Four Corners Utah, Four Corners Wyoming and United Energy Workers, by inappropriately obtaining a printout of the patients of Mountain West Medical Supply, Linn Wright effectively had a confidential patient list for most all of the Shumways' companies' patients.  Linn Wright disclosed that he obtained this confidential patient list by logging into the U.S. Department of Labor EEOICPA payment center database.  He maintained that he had accessed this payment center database utilizing the Shumways'

companies' confidential login and password information.  Linn Wright claimed to have done so

in order to verify whether the Shumways were being truthful regarding their representations of

their payment obligations under the MIPA.  The Shumways were incensed by this revelation and

demanded that as a condition of settlement Linn Wright turn over the paper copy of the

Shumways' companies' confidential patient list and commit to never again access the

Shumways' companies' confidential patient list.

61.     The parties to the MIPA Litigation entered into that certain "Settlement

Agreement and Mutual Release," dated November 17, 2014 ("Settlement Agreement and Mutual

Release"), which resolved the Prior Litigation as applied to them.  A true and correct copy of

Settlement Agreement and Mutual Release is attached hereto as **Exhibit 2** and incorporated

herein by reference.

62.     Pursuant to section 2(a)(2) of the Settlement Agreement and Mutual Release and

to memorialize his commitment to turn over his paper copy of, and to never again access, the

Shumways' companies' confidential patient list, Linn Wright executed that certain Affidavit of

James Linn Wright regarding Protected Healthcare Information and Covenants and Obligations

Related Thereto, dated November 17, 2014 ("Linn Wright's November 17, 2014 Affidavit").  A

true and correct copy of Linn Wright's November 17, 2014 Affidavit is attached hereto as

**Exhibit 3** and incorporated herein by reference.

63.     Under paragraph 11 of Linn Wright's November 17, 2014 Affidavit, Linn Wright

stated as follows:

> I have delivered the paper printout copy of the Company's client patient list to the
> Company, which is the only copy of the Company's client patient list in my
> possession. [ ] . . . I further affirm and declare under penalties of perjury that I

have retained no paper, electronic, digital or any other copies or facsimiles of the Company's client patient list or the multiple client patient medical billing histories. All such documents have been destroyed.

64.    Under paragraph 13 of Linn Wright's November 17, 2014 Affidavit, Linn Wright "covenant[ed] never again to access the Protected Patient Information of the Company."

65.    Under paragraph 14 of Linn Wright's November 17, 2014 Affidavit, Linn Wright covenanted that his failure to abide the terms and covenants of his Affidavit would

result in untold harms, penalties and claims against the Company and its owners, Travis Shumway and Chad Shumway[,] . . . the financial impact of such harms, penalties and claims against the Company and its owners [would be] difficult to assess and quantify[,] and for which he agreed to pay Two Hundred Fifty Thousand Dollars ($250,000.00) to the Company for [his] breach of any term or covenant of this Affidavit.

66.    Upon information and belief, Linn Wright has misappropriated one more of Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' proprietary, confidential information and trade secrets and has used them without authorization to directly compete or attempt to directly compete with the Shumways and their companies. Linn Wright's unlawful conduct has caused, and is continuing to cause, significant damage to the Shumways and their companies and if not enjoined will irreparably harm the Shumways and their companies.

## Defendants' Unlawful Acts

67.    During the three or four months preceding the Shumways and Linn Wright's execution of the MIPA, which occurred on or about March 12, 2013, the Shumways determined to hire a chief executive officer ("CEO") of Four Corners Utah to partially fulfill the duties Linn Wright had been performing for Four Corners Utah and Mountain West Medical Supply.

68.    In December 2012, Gary Slavens was hired as CEO of Four Corners Utah.

69.    Gary Slavens signed a contract whereby he acknowledged that, as CEO, he would be provided with confidential client (patient) information which was to remain the exclusive property and control of Four Corners Utah.  Gary Slavens covenanted not to directly or indirectly use, divulge, or otherwise disclose the confidential information.

70.    Following Linn Wright's separation from Mountain West Medical Supply and his business associations with the Shumways, Linn Wright and various family members (some of Audra Wright's siblings and their spouses) organized a DME company named "Mountain Medical Supply, LLC" and a home health care agency named "Energy Workers of America Healthcare, LLC."

71.    The Shumways believe Linn Wright purposefully named these businesses as he did to create confusion in the marketplace with the Shumways' businesses, Mountain West Medical Supply and United Energy Workers, and to capitalize on the business goodwill associated with the Shumways' businesses.

72.    In early 2015, the Shumways discovered that Gary Slavens had embezzled significant sums of money from Four Corners Utah during his tenure as CEO as well as failed to properly discharge his duties as CEO.  Consequently, the Shumways fired Gary Slavens as CEO in April 2015.

73.    Thereafter, Gary Slavens threatened the Shumways with litigation if they did not pay him hundreds of thousands of dollars.  The Shumways ignored Gary Slavens' unfounded threats.

74.     In December 2015, Gary Slavens filed a lawsuit against the Shumways, Four

Corners Utah and Four Corners Wyoming, alleging that he was the owner of Four Corners

Utah's business operations in the State of New Mexico, among other claims.  The Shumways

and Four Corners Utah filed a counterclaim against Gary Slavens and two related business

entities organized by him into which the embezzled funds had been transferred, namely, Four

Corners Health Care-NM, LLC, a New Mexico limited liability company, and Four Brothers

Health Care, LLC, a New Mexico limited liability company.  This action was adjudicated in the

Fourth Judicial District Court in and for Utah County, Utah, Provo Department, civil number

150401868 (the "Gary Slavens Lawsuit").

75.     During the pendency of the Gary Slavens Lawsuit, the Shumways started to doubt

whether Linn Wright was honoring his contractual commitments under the MIPA, the Settlement

Agreement and Mutual Release, and Linn Wright's November 17, 2014 Affidavit, and they also

suspected Linn Wright, Gary Slavens and others were somehow colluding to violate the MIPA

and the covenants in Linn Wright's November 17, 2014 Affidavit.

76.     Curiously, Gary Slavens designated Linn Wright as a witness in the Gary Slavens

Lawsuit and several months after the commencement of the Gary Slavens Lawsuit, Linn Wright

gave a declaration in support of a motion that Gary Slavens filed.

77.     Consequently, on December 8, 2016, the Shumways had Linn Wright served with

a subpoena to give a deposition in connection with the Gary Slavens Lawsuit.  Although Linn

Wright appeared at the deposition, he refused to proceed with questioning shortly after the

deposition commenced.  After excusing himself from the deposition, Linn Wright reportedly

called his attorney, who, according to Linn Wright, advised him not to proceed with the deposition.

78.    When Plaintiffs' counsel tried to reschedule Linn Wright's deposition, his attorney claimed that Linn Wright would assert his Fifth Amendment privilege against self-incrimination.  However, by voluntarily providing a declaration in furtherance of the Gary Slavens Lawsuit, Linn Wright had waived his Fifth Amendment privilege as applied to the subjects addressed in said declaration.  Linn Wright eventually acquiesced and his deposition in the Gary Slavens Lawsuit was rescheduled for February 7, 2017.

79.    During this deposition, Linn Wright testified that he spoke to Gary Slavens in early 2015 about Gary Slavens' experiences working and being associated in business with the Shumways, and that following this conversation with Gary Slavens in early 2015, Linn Wright had no other contacts or associations with Gary Slavens until Gary Slavens contacted him about giving a declaration in the Gary Slavens Lawsuit.  Linn Wright's Declaration in the Gary Slavens Lawsuit is dated November 15, 2016.

80.    Later during his deposition, Linn Wright testified that after being contacted in or about November 2016 to prepare the aforementioned declaration for the Gary Slavens Lawsuit, he had no further discussions or meetings of any kind with Gary Slavens.

81.    The Shumways' doubts about whether Linn Wright was honoring his contractual commitments under the MIPA and Linn Wright's November 17, 2014 Affidavit were confirmed during 2018.

82.    In February 2018, the Shumways deposed Gary Slavens, individually and as the Utah Rule of Civil Procedure 30(b)(6) designee for his companies that were co-counterclaim

defendants in the Gary Slavens Lawsuit.  A few months before these depositions, the Shumways issued subpoenas duces tecum to various banks at which Gary Slavens or his related business entities held accounts.  Among the produced bank records were copies of several checks totaling more than $70,000 from Linn Wright's wife, Audra Wright, or Linn Wright's company, Energy Workers of America Healthcare, LLC, which were signed by Linn Wright or Audra Wright and made payable to Gary Slavens or his company, Four Brothers Health Care, LLC.

83.     These checks included the following:

a.   Bank of American Fork account check from and signed by Audra Wright to Gary Slavens, dated July 25, 2016, in the amount of $1,500.00;

b.   Utah Community Credit Union account check from and signed by Audra Wright to Four Brothers Healthcare, dated August 5, 2016, in the amount of $45,000.00;

c.   Utah Community Credit Union account check signed by Linn Wright on behalf of Energy Workers of America Healthcare to Four Brothers Healthcare, dated September 1, 2016, in the amount of $5,000.00;

d.   Utah Community Credit Union account check signed by Linn Wright on behalf of Energy Workers of America Healthcare to Four Brothers Healthcare, dated October 3, 2016, in the amount of $5,000.00;

e.   Utah Community Credit Union account check signed by Linn Wright on behalf of Energy Workers of America Healthcare to Four Brothers Healthcare, dated October 24, 2016, in the amount of $5,000.00;

      f.   Utah Community Credit Union check signed by Linn Wright on behalf of Energy

          Workers of America, LLC to Four Brothers Healthcare, dated December 1, 2016,

          in the amount of $5,000.00; and

      g.   Utah Community Credit Union account check from and signed by Audra Wright

          to Four Brothers Healthcare, dated January 4, 2017, in the amount of $5,000.00.

84.    During these depositions, Gary Slavens initially testified that neither he nor his companies had ever had any business or financial dealings with Linn Wright or any company associated with Linn Wright; and then after the aforementioned checks were marked as exhibits in such depositions, Gary Slavens claimed the checks were payments for medical office furnishings he had sold to Linn Wright, the details of which transaction he struggled to explain.

85.    A few months later, on June 21, 2018, Audra Wright was subpoenaed for a deposition in the Gary Slavens Lawsuit. She testified that neither she nor her husband, Linn Wright, nor any of their businesses had ever purchased used medical office furnishings from Gary Slavens or any company associated with him. She further testified the aforementioned checks made payable to Gary Slavens or his company were to reimburse Gary Slavens for his efforts and to purchase a vehicle for him in furtherance of organizing and operating home health care agency in the State of New Mexico, allegedly to be owned and operated by Gary Slavens and her.

86.    Audra Wright also testified that on or about August 8, 2016 she prepared three separate provider applications to the U.S. Department of Labor as manager of Four Corners Health Care—NM, LLC (a company organized by Gary Slavens) to operate a home health care agency in the State of New Mexico for EEOICPA and RECA beneficiaries. She further testified

that this intended business venture was between Gary Slavens, Linn Wright and her, and Linn Wright instructed her how to fill out and submit the provider application forms.

87.     The aforementioned submitted provider applications listed as a business address 411 West Highway 66, Milan, New Mexico 87021.  This is the exact same business address from which Four Corners Utah has operated a home health care agency office for EEOICPA and RECA beneficiaries and had a written commercial lease since July 25, 2013.

88.     The Gary Slavens Lawsuit was tried to a jury between April 15 and April 26, 2019.

89.     During cross-examination on April 25, 2019, Gary Slavens testified under oath that he "took all of New Mexico's stuff" with him when he was terminated as the CEO of Four Corners Utah.

90.     When asked to clarify what information he had, Gary Slavens affirmed that he continues to maintain a complete file for every single Four Corners Utah patient in the state of New Mexico, including their Department of Labor information and their social security numbers.

91.     Gary Slavens testified that he has this patient information both in paper in a file cabinet in his Springville home and electronically on his computer.

92.     Gary Slavens has not returned any of this information to the Shumways or Four Corners Utah.

93.     The jury in the Gary Slavens Lawsuit returned its Special Verdict on April 26, 2019, finding that Gary Slavens entered into a written agreement to serve as CEO of Four Corners Utah and breached the CEO agreement, thereby damaging Four Corners Utah; Gary Slavens breached the implied covenant of good faith and fair dealing, thereby damaging Four

Corners Utah; Gary Slavens converted money and property of Four Corners Utah, thereby

damaging Four Corners Utah; Gary Slavens converted money and property belonging to the

Shumways, thereby damaging them; and Gary Slavens perpetrated a fraud against Four Corners

Utah, which was proved by clear and convincing evidence, thereby damaging Four Corners

Utah. The jury awarded punitive damages to Four Corners Utah and the Shumways as a

consequence of Gary Slavens' fraud and conversion.

94.    On June 18, 2019, the Honorable Thomas Low, Fourth Judicial District Court

Judge, entered an Amended Judgment in the Gary Slavens Lawsuit against Gary Slavens, ruling,

in pertinent part, as follows:

a.    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that an amended
judgment will enter against Plaintiff and Counterclaim Defendant Gary D.
Slavens as follows: adjusted damages totaling Five Hundred Forty-Eight
Thousand, Nine Hundred Thirty-Three and 65/100 Dollars ($548,933.65);
punitive damages totaling Six Hundred Six Thousand, Fifty and 32/100 Dollars
($606,050.32); attorneys' fees totaling Six Hundred Fourteen Thousand, Six
Hundred Seventeen and 85/100 Dollars ($614,617.85); costs totaling Eighty-two
Thousand, Two Hundred Forty-nine and 53/100 Dollars ($82,249.53); and the
sum of Fourteen Thousand, Eighty-eight and 70/100 Dollars ($14,088.70) as a
sanction against Gary D. Slavens for lying under oath as set forth in the Court's
Order of Contempt against Gary D. Slavens, entered on February 2, 2018. The
amended judgment now totals One Million, Eight Hundred Sixty-five Thousand,
Nine Hundred Forty and 05/100 Dollars ($1,865,940.05). This amended
judgment amount may be further augmented by the amounts of all attorneys' fees
and costs accruing after May 15, 2019 until paid in full, inclusive of all costs of
collection; [and]

b.    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Four Corners
Health Care Corp., a Utah corporation, is the owner of all home health care
agency operations within the State of New Mexico, as well as all other states in
which said corporation has heretofore operated and currently operates; that neither
Gary D. Slavens, nor Four Corners Health Care—NM, LLC, a New Mexico
limited liability company, nor Four Brothers Health Care, LLC, a New Mexico
and Utah limited liability company, has any right, title or interest in any home
health care agency operations within the State of New Mexico; that Four Corners

Health Care Corp., a Utah corporation, may work directly with the New Mexico Department of Health to obtain the issuance or reissuance, as the case may be, of Operator's License #3441 for the Shiprock, New Mexico "Parent" office with the Ownership Name of "Four Corners Health Care Corp., a Utah corporation" (with Travis Lynn Shumway and Chad L. Shumway listed as greater than 5% owners of said corporation), and under the operator name of "Four Corners Health Care Corp."; that Four Corners Health Care Corp., a Utah corporation, may work directly with the New Mexico Department of Health to obtain the issuance or reissuance, as the case may be, of Operator's License #3456 for the Milan, New Mexico "Branch" office with the Ownership Name of "Four Corners Health Care Corp., a Utah corporation" (with Travis Lynn Shumway and Chad L. Shumway listed as greater than 5% owners of said corporation), and under the operator name of "Four Corners Health Care Corp."

95.     Linn Wright's aforementioned actions, directly and indirectly through his wife, of associating with, conspiring with and paying Gary Slavens to set up a competing business to Four Corners Utah in the State of New Mexico utilizing the Shumways' confidential patient list are clear violations of the MIPA and Linn Wright's November 17, 2014 Affidavit.

96.     As fact discovery was drawing to a close in the Gary Slavens Lawsuit, the Shumways learned from some of Linn Wright's former business partners in Mountain Medical Supply, LLC and Energy Workers of America Healthcare, LLC that in fact Linn Wright had, contrary to the covenants in Linn Wright's November 17, 2014 Affidavit, retained the Shumways' companies' confidential patient list.

97.     The Shumways also learned that Linn Wright, directly and indirectly, had been soliciting the Shumways' patients through other home health care agencies that he had organized and had been offering to sell names from the Shumways' companies' confidential patient list to actual or prospective competitor home health care agencies serving EEOICPA and RECA beneficiaries.

98.     Wayne Reaves, Seth Clayton and Angela Caines, former business partners of Linn Wright's in Energy Workers of America Healthcare, LLC (a home health care agency servicing EEOICPA and RECA beneficiaries), Mountain Medical Supply, LLC (a DME company servicing EEOICPA and RECA beneficiaries) or both, testified in depositions they gave in the Gary Slavens Lawsuit that Linn Wright did the following things during the period of their collective business operations, which began in approximately August 2013 and ended on or about September 1, 2016:

    a.  From the commencement of their business associations, Linn Wright told them he was "under a noncompete" with the Shumways.

    b.  Linn Wright collectively approached them about doing some type of a home health care agency joint venture with Gary Slavens in the State of New Mexico.

    c.  Approximately a year after the other business partners rejected Linn Wright's aforementioned joint venture proposal, Linn Wright approached Wayne Reaves privately about partnering with him to create a consulting company that would manage the billings of patients and assist Gary Slavens in building a home health care agency servicing Four Corners Utah's patients in New Mexico.

    d.  Linn Wright regularly told them that he had in his possession a list of the Shumways' companies' patients.

    e.  Several months before Linn Wright proposed the aforementioned joint venture with Gary Slavens to Wayne Reaves, Linn Wright proposed to Seth Clayton that the two of them pursue a business association with a home health care company

called "Remain at Home" wherein they would offer the Shumways' companies' confidential patient list in furtherance of that business association.

    f.    In an effort to avoid directly violating his "noncompete" with the Shumways, Linn Wright set up his ownership in such competing business ventures under the guise of being a consultant through his company ALW Healthcare Consulting, LLC.

99.    On or about September 1, 2016, Seth Clayton, Wayne Reaves and Angela Caines severed their common ownership with Linn Wright in Energy Workers of America Healthcare, LLC and Mountain Medical Supply, LLC.  Afterward, Linn Wright became the owner of Energy Workers of America Healthcare, LLC and the others became the owners of Mountain Medical Supply, LLC.

100.    During Wayne Reaves' deposition, he identified an individual named Chris Williams, who became a very close, inside business associate of Linn Wright following the restructured ownership of Energy Workers of America Healthcare, LLC and Mountain Medical Supply, LLC.  Wayne Reaves recommended the Shumways speak with Chris Williams concerning the details of Linn Wright's untoward actions.

101.    Accordingly, the Shumways caused Chris Williams (i.e., Christopher Timothy Williams) to be served with a subpoena duces tecum and a subpoena for a deposition.  Chris Williams was deposed on June 22, 2018 and produced documents during and after his deposition in response to the subpoena duces tecum.

102.    Chris Williams confirmed in more significant detail and through produced documents that Linn Wright had, contrary to the MIPA and Linn Wright's November 17, 2014

Affidavit, retained the Shumways' companies' confidential patient list(s), somehow come into possession of many other confidential patient records and related confidential documents, that Linn Wright had solicited the Shumways' patients through other home health care agencies organized by Linn Wright , and that Linn Wright had offered to sell or broker names from the Shumways' companies' confidential patient list to operating or prospective competitor home health care agencies serving EEOICPA and RECA beneficiaries.

103.   Chris Williams testified that he began working for Linn Wright and his companies as a "marketer" (i.e., patient recruiter) in September 2015.  After Linn Wright severed the ownership of Energy Workers of America Healthcare, LLC and Mountain Medical Supply, LLC, Chris Williams continued working with Linn Wright in Energy Workers of America Healthcare, LLC for nearly two additional years.  During this time, Chris Williams became intimately involved in all of Linn Wright's ongoing, developing and prospective home health care business operations.

104.   According to Chris Williams and his wife, Melissa Williams, who was also deposed by the Shumways, Linn Wright promised Chris Williams the position of CEO of Energy Workers of America Healthcare, LLC and said he would be able to make millions of dollars in other related business ventures.

105.   Chris Williams testified that Linn Wright frequently spoke of his disdain for the Shumways and more generally described that he was under some sort of a "noncompete" with the Shumways.

106.   Chris Williams testified that Linn Wright maintains on his laptop computer an electronic file with patient names and other confidential patient information (i.e., addresses, U.S.

Department of Labor numbers, Social Security numbers, birthdates and "everything needed to bill a patient") of the Shumways' companies, which computer files were exhibited to Chris Williams during multiple meetings with Linn Wright. Linn Wright told Chris Williams that he had taken this confidential patient information from every prior home health care company or DME company serving EEOICPA and RECA beneficiaries with which he had been associated. According to Chris Williams, such confidential patient information is maintained in separate electronic files by unique company name (e.g., "Four Corners").

107.    Chris Williams further testified that Linn Wright periodically "bragged" that the confidential patient list on his laptop computer contains "over 500 names," and he could "bill every one of those names for six months and then run off to Belize or a non-extradition company."

108.    Chris Williams further testified that Linn Wright has a black briefcase/computer bag in which he maintains hard copies of various confidential documents from his previous employers, including the Shumways' companies, which paper files were exhibited to Chris Williams during multiple meetings with Linn Wright.

109.    Chris Williams further testified that Linn Wright has used names from the confidential patient list to start up competitive home health care agencies in South Carolina and Arizona.

110.    Chris Williams further testified that during 2016 and 2017 Linn Wright, Audra Wright and Gary Slavens were working on a business venture whereby they organized a company called "Four Brothers Healthcare, LLC" for the purpose of trying to solicit all of Four Corners Utah's patients in New Mexico and Arizona. This group offered Chris Williams the

position of being the person primarily responsible for soliciting and trying to switch these patients from Four Corners Utah to Four Brothers Healthcare, LLC.

111.    According to Chris Williams, Linn Wright put Gary Slavens on the payroll of Energy Workers of America, LLC for this purpose prior to the formation of Four Brothers Healthcare, LLC. The above-mentioned checks to Gary Slavens or Four Brothers Healthcare, LLC totaling in excess of $70,000 are believed to be evidence of this arrangement. Chris Williams further testified that Audra Wright was made a 51% owner of Four Brothers Healthcare, LLC and Gary Slavens was made a 49% owner, so that the Wrights would have operational control of the business.

112.    Chris Williams further testified that in or about June 2017, Linn Wright sold the assets of United Energy Workers Healthcare, LLC for an amount in excess of $2 million to a company called Legacy Home Health, LLC, which is owned by Greg Roper and Nathan Johns. Legacy Home Health, LLC, Greg Roper, Nathan Johns, or some combination of them, partially financed the asset purchase with a bank loan and Linn Wright seller-financed the balance of the asset purchase transaction.

113.    Chris Williams further testified that he was one of the "assets" that was sold to Legacy Home Health, LLC, and so after the sale, he began working as a marketer for Legacy Home Health, LLC as well as maintained his business associations with Linn Wright. As such, he worked as a liaison between the transacting parties.

114.    According to Chris Williams, unbeknownst to Greg Roper or Nathan Johns, Linn Wright grossly overstated the number and quality of patients receiving home health care services in response to Messrs. Roper and Johns' due diligence inquiries prior to closing; and

furthermore, Linn Wright failed to disclose to them after the asset purchase agreement was signed but prior to closing that a key nurse administrator recently left to create her own home health care agency, taking several patients with her. Consequently, Legacy Home Health, LLC, Greg Roper and Nathan Johns substantially overpaid for the assets of Energy Workers of America Healthcare, LLC.

115. When Greg Roper and Nathan Johns discovered Linn Wright's misrepresentations and deceptions, they stopped making payments on the seller-financed portion of the asset purchase agreement. During the ensuing months, both sides threatened legal action against the other and made various proposals to remedy their grievances. Chris Williams was substantially involved in trying to fashion a compromise between these parties.

116. Chris Williams testified that during this period of negotiations, Linn Wright, Audra Wright, Greg Roper, Nathan Johns and he attended a meeting at Legacy Home Health, LLC's office where these parties discussed how such patients could be converted to Legacy Home Health, LLC patients and how many patients would be required to settle the parties' dispute. According to Chris Williams, Audra Wright recorded the entirety of this meeting on her mobile phone.

117. Chris Williams testified that on one occasion Linn Wright presented Chris Williams with a list of 16 patients from the Casper, Wyoming area from the Shumways' companies' confidential patient list who were all receiving services from one or more the Shumways' companies. The list of patients had a title or header at the top entitled "Four Corners Healthcare." Linn Wright directed Chris Williams to solicit each of these patients for the purpose of trying to switch them to Legacy Home Health, LLC for their home health services.

According to Chris Williams, Linn Wright thought that by converting this number of patients to Legacy Home Health, LLC, he could settle the brewing lawsuit.

118.    Chris Williams further testified that on another occasion Linn Wright presented Chris Williams with a photocopy of a "Four Corner Health Care, Inc." Admission Service Agreement for patient Gail ******* [last name purposefully omitted to protect confidentiality of patient] of Grand Junction, Colorado, which Linn Wright directed Chris Williams to solicit for the purpose of switching home health care agencies. Additionally, Chris Williams testified that Linn Wright contemporaneously accessed his laptop computer in Chris Williams' presence and gave him the names of four additional Four Corners Utah patients residing in the same area and directed him to solicit them, too. After receiving these names from Linn Wright, Chris Williams handwrote them on the top left-hand corner of the aforementioned Admission Service Agreement. This confidential patient record was among the documents Chris Williams produced in response to the Shumways' subpoena duces tecum.

119.    For a couple of months, the parties argued back and forth about how many names would have to be provided to settle their disagreement and for Legacy Home Health, LLC to resume making payments on the seller-financed portion of the transaction. According to Chris Williams, the owners of Legacy Home Health, LLC were initially eager to get all 500 plus names from Linn Wright, but Linn Wright repeatedly refused to offer any more patient names than were represented by him to be viable, ongoing patients at the time he entered into the asset purchase agreement with Legacy Home Health, LLC.

120.    According to Chris Williams, Legacy Home Health, LLC eventually declined Linn Wright's offer to accept some number of the Shumways' companies' confidential patients

in satisfaction of their dispute and, instead, filed a lawsuit against Linn Wright and Energy

Workers of America Healthcare, LLC.

121.    Following Chris Williams' deposition, Chad Shumway contacted Greg Roper in

an effort to corroborate Chris Williams' deposition testimony about the asset sale transaction.

Greg Roper substantially confirmed the details of Chris Williams' deposition testimony.

Furthermore, on July 3, 2018, Greg Roper forwarded to Chad Shumway an email conversation of

February 19-20, 2018 among Linn Wright, Greg Roper and Nathan Johns wherein they discussed

the number of patients from other home health care agencies that Linn Wright would provide as

a part of a proposal to settle their dispute.

122.    Linn Wright's aforementioned actions of retaining as well as somehow later

accessing additional paper and electronic copies of the Shumways' companies' confidential

patient list and other documents, solicitations of such patients, and offers to sell groups of such

are clear violations of the MIPA and Linn Wright's November 17, 2014 Affidavit.

123.    Linn Wright's misappropriation and theft of Plaintiffs' proprietary confidential

information and trade secrets has caused Plaintiffs to lose, or has the potential to cause Plaintiffs

to lose, hundreds of thousands of dollars in lost profits.

124.    Linn Wright, Audra Wright, and Gary Slavens' wrongful conduct as alleged

herein was and continues to be willful and malicious and constitutes or involves the wrongful

obtaining of property by false pretenses, a false representations, and/or actual fraud by Linn

Wright, Audra Wright, and Gary Slavens under 11 U.S.C. § 523, and accordingly Linn Wright,

Audra Wright, and Gary Slavens' liabilities alleged in this Complaint may not be discharged

pursuant to 11 U.S.C. § 523.

125.    On information and belief, Linn Wright, Audra Wright, and Gary Slavens, at the very least, and perhaps others, conspired in some or all of the activities alleged herein in willful disregard of Plaintiffs' rights.

126.    Plaintiffs are at risk for immediate and irreparable injuries if Linn Wright, Audra Wright, and Gary Slavens, at the very least, and perhaps others, are not enjoined from continuing trade secret misappropriation and unlawful dissemination.

127.    Linn Wright, Audra Wright, and Gary Slavens have a history of destroying and obfuscating information related to their illicit actions and taking steps to prevent others from discovering their true identities.

128.    If remaining information is not preserved, Plaintiffs stand to be immediately and irreparably harmed, as Linn Wright, Audra Wright, and Gary Slavens will likely continue their pattern of destroying, hiding, or misappropriating information.

129.    Plaintiffs have suffered and will continue to suffer injury from Defendants' conduct as complained of herein, unless and until Defendants are enjoined from using and disseminating misappropriated trade secrets and confidential information belonging to Plaintiffs, unfairly competing with Plaintiffs, and interfering with Plaintiffs' business relations.

## FIRST CLAIM FOR RELIEF

### (Defend Trade Secrets Act Claim ("DTSA") – 18 U.S.C. § 1836 against All Defendants)

130.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

131.    As set forth above, Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers have various trade secrets critical to the success

of their businesses, including, most notably, a confidential patient list that has been developed

over the years to include, or is based upon, unique designs, formulas, information, methods,

patterns, processes, techniques, demographic information, and marketing and advertising

systems, as well as the compilation of such, all of which constitute "trade secrets" within the

meaning of the DTSA, 18 U.S.C. § 1839(3).

132.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and

United Energy Workers' trade secrets are related to their operations as home health care

providers and DME providers to beneficiaries of the EEOICPA and RECA across the United

States.

133.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and

United Energy Workers have invested and spent significant amounts of money, effort, energy,

resources and time developing their trade secrets, which derive independent economic value,

actual or potential, from not being generally known to, and not being readily ascertainable

through proper means by, another person who can obtain economic value from the disclosure or

use of the information.

134.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and

United Energy Workers have taken steps and made efforts that are reasonable under the

circumstances to maintain the secrecy of their trade secrets by, among other things, requiring

contractors, employees, shareholders and members, as the case may be, to enter into written

confidentiality, non-disclosure and non-solicitation agreements, limiting the individuals to whom

their trade secrets were disclosed; namely, to include only certain individuals employed by

Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers who had a legitimate need to access the confidential information.

135.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers also maintain security measures to limit access to their confidential information and trade secrets by requiring password protected login credentials to access computer systems, platforms, and marketing accounts, and only allowing access to sensitive information to a select few people.

136.    Linn Wright was provided access to Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets only after he became associated with Mountain West Medical Supply as a member and otherwise with Four Corners Utah.  Upon cessation of his associations as a member, an employee, a contractor or otherwise, he signed the MIPA, wherein, among other things, he covenanted not to use, sale, exploit, reproduce, disclose or transfer of Mountain West Medical Supply or Four Corners Utah's confidential information.

137.    Linn Wright was under a duty and obligation not to use or disclose those trade secrets.

138.    Gary Slavens was provided access to Four Corners Utah's trade secrets only after he became associated with Four Corners Utah as its CEO.  Gary Slavens signed an agreement whereby he acknowledged that he would be provided with confidential client information which was to remain the exclusive property and control of Four Corners Utah.  Gary Slavens covenanted not to directly or indirectly use, divulge, or otherwise disclose the confidential information.

139.    Gary Slavens was under a duty and obligation not to use or disclose those trade secrets.

140.    On information and belief, Audra Wright, Jane and John Does 1-10, and Doe Business Entities 1-10 acquired Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets under circumstances giving rise to a duty to maintain their secrecy.

141.    Defendants misappropriated Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets while knowing they were under an obligation not to use or disclose them.

142.    Defendants have used, are using, and inevitably will continue to use Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets without Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' consent, which has damaged, and will irreparably harm Plaintiffs. Moreover, pursuant Sections 8.06 of the MIPA, irreparable harm is presumed in the event of any breach.

143.    Defendants' misappropriation of Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets was accomplished through improper means including, without limitation, and on information and belief, unauthorized access to Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' computer systems using credentials obtained during Linn Wright's prior associations with said companies and used or accessed in violation of the MIPA and Linn Wright's November 17, 2014 Affidavit.

144.    Defendants' actions as described herein constitute a misappropriation within the meaning of the DTSA, 18 U.S.C. § 1839(5).

145.    The actions of Defendants have caused and will continue to cause damage to Plaintiffs and, unless restrained, will further damage Plaintiffs, the nature and extent of which may not be able to be proved with certainty, irreparably injuring Plaintiffs, leaving them without a remedy at law.

146.    Plaintiffs are entitled to damages as a result of Defendants' misappropriation and/or violations of the DTSA, to the extent their actual losses are calculable.

147.    Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious, entitling Plaintiffs, on information and belief, to exemplary and/or punitive damages, up to two times their damages.

148.    Preliminary and permanent injunctive relief is necessary to prevent irreparable harm and further disclosure of Plaintiffs' trade secrets.

149.    Plaintiffs are entitled to any unjust enrichment obtained by Defendants' misappropriation of Plaintiffs' trade secrets and/or violation of the DTSA.

150.    Plaintiffs are therefore entitled to injunctive relief to prevent further use and dissemination of Plaintiffs' trade secrets, as well as damages for actual loss caused by misappropriation of trade secrets, damages for unjust enrichment, exemplary damages, and reasonable attorney's fees.

151.    In lieu of damages measured by other methods, pursuant to the DTSA, 18 U.S.C. § 1836(b)(3)(B)(ii), the damages caused by Defendants' misappropriation should be measured by imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure of or use

of each of Plaintiff's trade secrets (i.e., assessment of a royalty for each confidential patient file or record).

## SECOND CLAIM FOR RELIEF

### (Utah Uniform Trade Secrets Act – Utah Code § 13-24-1, et. seq. against All Defendants)

152.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

153.    As set forth above, Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers have various trade secrets critical to the success of their businesses, including, most notably, a confidential patient list that has been developed over the years to include, or is based upon, unique designs, formulas, information, methods, patterns, processes, techniques, demographic information, and marketing and advertising systems, as well as the compilation of such, all of which constitute "trade secrets" within the meaning of the Utah Uniform Trade Secret Act.

154.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets are related to their operations as home health care providers and DME providers to beneficiaries of the EEOICPA and RECA across the United States.

155.    Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers have invested and spent significant efforts, energy, resources and time developing their trade secrets, which derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

156.   Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers have taken steps and made efforts that are reasonable under the circumstances to maintain the secrecy of their trade secrets by, among other things, requiring contractors, employees, shareholders and members, as the case may be, to enter into written confidentiality, non-disclosure and non-solicitation agreements, limiting the individuals to whom their trade secrets were disclosed; namely, to include only certain individuals employed by Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers who had a legitimate need to access the confidential information.

157.   Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers also maintain security measures to limit access to their confidential information and trade secrets by requiring password protected login credentials to access computer systems, platforms, and marketing accounts, and only allowing access to sensitive information to only a select few people.

158.   Linn Wright was provided access to Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets only after he became associated with Mountain West Medical Supply as a member and otherwise with Four Corners Utah.  Upon cessation of his associations as a member, an employee, a contractor or otherwise, he signed the MIPA, wherein, among other things, he covenanted not to access, use, sale, exploit, reproduce, disclose or transfer of Mountain West Medical Supply or Four Corners Utah's confidential information.

159.   Linn Wright was under a duty and obligation not to use or disclose those trade secrets.

160.    Gary Slavens was provided access to Four Corners Utah's trade secrets only after he became associated with Four Corners Utah as its CEO. Gary Slavens signed an agreement whereby he acknowledged that he would be provided with confidential client information which was to remain the exclusive property and control of Four Corners Utah. Gary Slavens covenanted not to directly or indirectly use, divulge, or otherwise disclose the confidential information.

161.    Gary Slavens was under a duty and obligation not to use or disclose those trade secrets.

162.    On information and belief, Audra Wright, Jane and John Does 1-10, and Doe Business Entities 1-10 acquired Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets under circumstances giving rise to a duty to maintain their secrecy.

163.    Defendants misappropriated Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets while knowing they were under an obligation not to use or disclose them.

164.    Defendants have used, are using, and inevitably will continue to use Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets without Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' consent, which has damaged and will irreparably harm Plaintiffs. Moreover, pursuant Sections 8.06 of the MIPA, irreparable harm is presumed in the event of any breach.

165.    Defendants' misappropriation of Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' trade secrets was accomplished through improper means including, without limitation, and on information and belief, unauthorized access to Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming and United Energy Workers' computer systems using credentials obtained during Linn Wright's prior associations with said companies and used in violation of the MIPA and Linn Wright's November 17, 2014 Affidavit.

166.    Defendants' actions as described herein constitute a misappropriation within the meaning of the Utah Uniform Trade Secrets Act.

167.    The actions of Defendants have caused and will continue to cause damage to Plaintiffs and, unless restrained, will further damage Plaintiffs, the nature and extent of which may not be able to be proved with certainty, irreparably injuring Plaintiffs, leaving them without a remedy at law.

168.    Plaintiffs are entitled to damages as a result of Defendants' misappropriation and/or violations of the Utah Uniform Trade Secrets Act, to the extent their actual losses are calculable.

169.    Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious, entitling Plaintiffs, on information and belief, to exemplary and/or punitive damages, up to two times their damages.

170.    Preliminary and permanent injunctive relief is necessary to prevent irreparable harm and further disclosure of Plaintiffs' trade secrets.

171.    Plaintiffs are entitled to any unjust enrichment obtained by Defendants' misappropriation of Plaintiffs' trade secrets and/or violation of the Utah Uniform Trade Secrets Act.

172.    Plaintiffs are therefore entitled to injunctive relief to prevent further use and dissemination of Plaintiffs' trade secrets, as well as damages for actual loss caused by misappropriation of the trade secret, damages for unjust enrichment, exemplary damages, and reasonable attorney's fees.

173.    The actions of Defendants have caused and will continue to cause damage to Plaintiffs and, unless restrained, will further damage Plaintiffs, the nature and extent of which may not be able to be proved with certainty, irreparably injuring Plaintiffs, leaving it without a remedy at law.

174.    Plaintiffs are entitled to damages as a result of Defendants' misappropriation and/or violation of the Utah Uniform Trade Secrets Act, to the extent Plaintiffs' actual losses are calculable.

175.    In lieu of damages measured by other methods, pursuant to Utah Code Ann. § 13-24-4(1), the damages caused by Defendants' misappropriation should be measured by imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure of or use of each of Plaintiff's trade secrets (i.e., assessment of a royalty for each confidential patient file or record).

## THIRD CLAIM FOR RELIEF

### (Breach of Contract – MIPA against Linn Wright and Audra Wright)

176.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

177.    Linn Wright and Audra Wright, based on the Consent of Spouse she signed, had
duties of confidentiality under a binding and valid written agreement with Travis Shumway,
Chad Shumway, Mountain West Medical Supply and Four Corners Utah, to wit, the MIPA, in
which Linn Wright and Audra Wright, based on the Consent of Spouse she signed, agreed:

a.    by virtue of Linn Wright's affiliation with Mountain West Medical Supply
and Four Corners Utah he had access to confidential and proprietary
information of both companies (MIPA, § 8.01);

b.    Linn Wright and Audra Wright would not "disclose, directly or indirectly
to any person except authorized representatives of [the Shumways], the
names, addresses or telephone numbers of, or any other information
regarding, any present or past customer, client or account of the Company,
nor shall [Linn Wright] divulge other confidential information concerning
the Company's business" (MIPA, § 8.03);

c.    Linn Wright and Audra Wright would not "directly or indirectly contact
any past, present or future clients of contractors of the Company for the
purposes of selling, marketing or offering his services whether directly or
indirectly without prior written authorization or approval from [the
Shumways]" (MIPA, § 8.04);

d.    irreparable harm would be presumed in the event of any breach of the
MIPA (MIPA, §§ 8.01 and 8.06); and

    e.      Linn Wright and Audra Wright, based on the Consent of Spouse she signed, would "pay for any and all attorney fees and costs associated with [the Shumways'] enforcement of the confidentiality and non-compete provision of this Agreement . . . and liquidated damages . . . in the amount of 150% of [the] purchase price" (MIPA, § 8.06).

178.    Linn Wright and Audra Wright's wrongful conduct constitutes a breach of the MIPA.

179.    Linn Wright and Audra Wright have used and continue to use Plaintiffs' confidential information and trade secrets in violation of the MIPA.

180.    Linn Wright and Audra Wright's use of Plaintiffs' confidential information and trade secrets in violation of the MIPA has injured and continues to injure Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah and if not enjoined will irreparably harm Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah.

181.    Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah are entitled to an award of damages against Linn Wright and Audra Wright, jointly and severally, for breach of contract.

182.    Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah are entitled to an order for injunctive relief, per the terms of the MIPA, prohibiting further use by Linn Wright and Audra Wright of Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah's proprietary and confidential information and trade secrets.

183.    Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah are entitled to judgment against Linn Wright and Audra Wright, jointly and severally, for their breaches of the MIPA in the amount of 150% of the $550,000 purchase price for the membership interest in the MIPA, namely, $825,000.

184.    Travis Shumway, Chad Shumway, Mountain West Medical Supply and Four Corners Utah are entitled to an award of all costs and attorney's fees incurred by them in prosecution of their claims against Linn Wright and Audra Wright for breach of the MIPA.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract – Settlement Agreement and Mutual Release and Linn Wright's November 17, 2014 Affidavit against Linn Wright)

185.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

186.    As set forth above, Linn Wright entered into a written agreement to settle the Prior Litigation, to wit, the Settlement Agreement and Mutual Release.  In connection therewith, he also executed Linn Wright's November 14, 2014 Affidavit.

187.    In the Settlement Agreement and Mutual Release, Linn Wright covenanted as follows:

> The non-competition provision of paragraph 8.01 of the [MIPA] shall be redrafted and superseded as follows: For a period of five (5) years from the Effective Date of this Agreement, Wright will not provide home health care services or submit any bills or invoices to any person who is a participant in the [EEOICPA] administered by the U.S. Department of Labor and a patient of Mountain West Medical Supply, LLC, Four Corners Health Care Corp., or any company owned by Travis Shumway or Chad Shumway. ... Any material and knowing violation of this covenant not to compete by Wright or the Shumway Parties and proved in arbitration or a court of law shall result in liquidated damages to the prevailing party in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), plus reasonable attorney fees and costs.

188.    The Settlement Agreement and Mutual Release further provided that the

Shumway Parties' release of Linn Wright was "made expressly conditional upon Wright's

continued compliance with his commitment[s] as set forth in [Linn Wright's November 17, 2014

Affidavit.]"

189.    As explained above, under paragraph 11 of Linn Wright's November 17, 2014

Affidavit, Linn Wright stated as follows:

> I have delivered the paper printout copy of the Company's client patient list to the
> Company, which is the only copy of the Company's client patient list in my
> possession. [ ] . . . I further affirm and declare under penalties of perjury that I
> have retained no paper, electronic, digital or any other copies or facsimiles of the
> Company's client patient list or the multiple client patient medical billing
> histories.  All such documents have been destroyed.

190.    Under paragraph 13 of Linn Wright's November 17, 2014 Affidavit, Linn Wright

"covenant[ed] never again to access the Protected Patient Information of the Company."

191.    Under paragraph 14 of Linn Wright's November 17, 2014 Affidavit, Linn Wright

covenanted that his failure to abide the terms and covenants of his Affidavit would

> result in untold harms, penalties and claims against the Company and its owners,
> Travis Shumway and Chad Shumway[,] . . . the financial impact of such harms,
> penalties and claims against the Company and its owners [would be] difficult to
> assess and quantify[,] and for which he agreed to pay Two Hundred Fifty
> Thousand Dollars ($250,000.00) to the Company for [his] breach of any term or
> covenant of this Affidavit.

192.    As explained above, Linn Wright has breached the terms of the Settlement

Agreement and Mutual Release and the covenants in Linn Wright's November 17, 2014

Affidavit in multiple ways and on multiple occasions, which were not made known to Plaintiffs

until 2018.

193.    In accordance with Linn Wright's November 17, 2014 Affidavit, Plaintiffs should be awarded liquidated damages of $250,000.00 against Linn Wright.

194.    In further accordance with the Settlement Agreement and Mutual Release and Linn Wright's November 17, 2014 Affidavit, Plaintiffs should be awarded their costs and attorney's fees.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment against All Defendants)

195.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

196.    Defendants have received an acknowledged benefit from Plaintiffs, from which each Defendant has profited or seeks to profit.

197.    It would be unjust for the Defendants to retain the benefits they have obtained from Plaintiffs without paying to Plaintiffs the fair value thereof.

198.    Plaintiffs are entitled to recover from each Defendant the value of the benefits that each Defendant has obtained from Plaintiffs.

## SIXTH CLAIM FOR RELIEF
### (Civil Conspiracy against All Defendants)

199.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

200.    On information and belief, there is or was an agreement between two or more persons to accomplish, or in furtherance of, the acts constituting the violations of Plaintiffs' rights and the causes of action alleged herein and said agreement facilitated the unlawful

objectives of one or more of the Defendants. Parties to said agreement included at least one or more of the following: Linn Wright, Audra Wright, and Gary Slavens.

201.    On information and belief, two or more of the Defendants did combine, and by concerted action have sought to, and did, misappropriate, convert, broker and/or sell Plaintiffs' confidential patient information.

202.    On information and belief, Defendants did combine with one or more other person or business entity, and by concerted action have sought to compete with Plaintiffs by engaging in acts of unfair competition, wrongful business practices, fraud, theft and/or conversion.

203.    Plaintiffs are entitled to a judgment against each Defendant found to have participated in the civil conspiracy alleged above for the entire amount of the damages Plaintiffs have sustained as a result thereof.

204.    Each Defendant found to have participated in the civil conspiracy is jointly and severally liable for the entire amount of damages proven with respect to each cause of action.

## SEVENTH CLAIM FOR RELIEF

### (Constructive Trust)

205.    Plaintiffs incorporate and reallege all other paragraphs of this Complaint as though fully set forth herein.

206.    Plaintiffs are entitled to have a constructive trust in their favor imposed on all proceeds arising from the use of Plaintiffs' confidential patient records and information as well as all proceeds arising from Defendants' use and misappropriation of Plaintiffs' proprietary confidential information and trade secrets.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an Order, Judgment, and Injunction as follows:

I.      Judgment finding Defendants jointly and severally liable to Plaintiffs, as specified, on each of Plaintiffs' alleged claims for relief;

II.     Enjoining each Defendant, and all other persons participating or acting in concert with them, from misappropriation of or otherwise using Plaintiffs' confidential patient lists and records, including use of Plaintiffs' trade secrets, proprietary and confidential information, derivatives thereof, and other intellectual property to compete against Plaintiffs;

III.    Enjoining each Defendant, and all other persons participating or acting in concert with them, from accessing, reproducing, copying, misappropriating, converting, brokering, and/or selling Plaintiffs' confidential patient information and trade secrets, proprietary and confidential information, and derivatives thereof;

IV.     Enjoining each Defendant, and all other persons participating or acting in concert with them, from using, distributing and disseminating any of the trade secrets or other confidential information belonging to Plaintiffs that were misappropriated by Defendants;

V.      Ordering each Defendant to surrender to the Court or to Plaintiffs all copies of Plaintiffs' confidential patient information, trade secrets and intellectual property, together with all articles (i.e., computers, mobile phones, paper files, briefcases or bags, etc.) by means of which further copies or repositories of any such materials may be made or maintained;

VI.     Ordering each Defendant to prepare an accounting of all proceeds generated by Defendants through the use of Plaintiffs' confidential patient records and information, trade

secrets and intellectual property, including but not limited to the names of all patients historically serviced by Defendants or their related companies so that a comparison may be made against the legitimate patients of Plaintiffs;

VII.        Ordering each Defendant to file with this Court and serve on Plaintiffs within thirty (30) days after service on the Defendants of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction and order of the Court;

VIII.       Awarding Plaintiffs damages for actual loss caused by the misappropriation of their trade secrets, damages for any unjust enrichment caused by the misappropriation of the trade secrets, and such other damages and awards available, enhanced damages available under federal and state laws, including under the DTSA, 18 U.S.C. § 1836(b)(3);

IX.         In lieu of damages measured by other methods, pursuant to the DTSA, 18 U.S.C. § 1836(b)(3)(B)(ii) and Utah Code Ann. § 13-24-4(1), awarding Plaintiffs' damages caused by Defendants' misappropriation measured by imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure of or use of each of Plaintiffs' trade secrets (i.e., assessment of a royalty for each confidential patient file or record);

X.          Awarding Plaintiffs enhanced or treble their damages and Defendants' profits as applicable under state or federal laws;

XI.         Awarding Plaintiffs damages for actual loss caused by such other wrongful conduct of Defendants for which Defendants may be liable, damages for the unjust enrichment caused by such wrongful conduct of Defendants, and exemplary damages for Defendants' willful and malicious actions;

XII.   Imposing a constructive trust in favor of Plaintiffs on all proceeds generated by Defendants through the use of Plaintiffs' confidential patient information, trade secrets and intellectual property;

XIII.   Awarding Plaintiffs their attorneys' fees and other costs of bringing this action;

XIV.   Awarding Plaintiffs pre-judgment and post-judgment interest until such awards are paid in full; and

XV.   Awarding Plaintiffs such other and further relief as is just and equitable.

DATED this 31st day of July 2019.

SNOW JENSEN & REECE, P.C

/ Gregory Hardman
Jeffrey R. Miles
Sean J. Romney
Attorneys for Plaintiffs