# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS LYNN SHUMWAY, an individual residing in the state of Utah; CHAD L. SHUMWAY, an individual residing in the state of Utah; MOUNTAIN WEST MEDICAL SUPPLY, L.L.C., a Utah limited liability company; UNITED ENERGY WORKERS HEALTHCARE, CORP., an Ohio corporation; FOUR CORNERS HEALTH CARE CORP., a Utah corporation; and FOUR CORNERS HEALTHCARE INC., a Wyoming corporation;<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES LINN WRIGHT, an individual; AUDRA WRIGHT, as individual; GARY D. SLAVENS, as individual; JANE AND JOHN DOES 1-10; and DOE BUSINESS ENTITIES 1-10;<br><br>    Defendants. | **EX PARTE SEIZURE ORDER AND EVIDENCE PRESERVATION ORDER**<br><br><br>**FILED UNDER SEAL**<br><br><br><br>Case No.: 4:19-cv-00058-DN-PK<br><br>District Judge David Nuffer |

This Ex Parte Seizure Order and Evidence Preservation Order ("Order") is entered against Defendants James Linn Wright, Audra Wright and Gary D. Slavens. The Order is entered pursuant to the Federal Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836. The Order is issued after consideration of the Application for Ex Parte Seizure and Preservation Orders and Supporting Memorandum ("Application")[1] filed by Plaintiffs Travis Lynn Shumway, Chad L. Shumway, United Energy Workers Healthcare, Corp., Four Corners Health Care Corp. and Four Corners Healthcare, Inc. (collectively "Plaintiffs"); the accompanying Joint Declaration of Travis

---

[1] Docket no. 4, filed under seal August 5, 2019.

Lynn Shumway and Chad L. Shumway[2] and the Exhibits thereto; a three-page listing of Entity Principals;[3] an ex parte hearing held August 9, 2019;[4] the Supplemental Memorandum supporting the Application;[5] the Declaration of J. Gregory Hardman;[6] the Joint Declaration of Michael Gutierrez and Trevor Haight and the Exhibits thereto;[7] and an exchange of draft orders[8] and emails.[9]

This Order GRANTS IN PART Plaintiffs' Application.[10]

Additionally, under the inherent authority of this court and the All Writs Act, 28 U.S.C. § 1651, third parties Microsoft Corporation and Google LLC ARE HEREBY ORDERED to copy and preserve, during the pendency of this action or until further order of this court, all digital files and data respectively within the Microsoft (including Hotmail) accounts of James Linn Wright and Google (Gmail) account(s) of Gary D. Slavens.

**Background**

Plaintiffs originally asked for (1) seizure of all Defendants' computer devices to the extent necessary for imaging, and without maintaining possession of any computer devices apart from copied files; for (2) pre-hearing on-site deletion from Defendants' devices of computer files

---

[2] Docket no. 5, filed under seal August 5, 2019.

[3] Docket no. 14, lodged August 20, 2019.

[4] Minute entry, docket no. 13, August 9, 2019.

[5] Docket no. 23, filed under seal August 23, 2019.

[6] Docket no. 25, filed under seal August 23, 2019.

[7] Docket no. 30, filed under seal August 23, 2019.

[8] [Draft] Ex Parte Seizure Order and Evidence Preservation Order, attachment no. 4 to Application, docket no. 4, filed under seal August 5, 2019; Ex Parte Seizure Order draft 080819, docket no. 20, lodged August 20, 2019 (sent with August 8, 2019 email to counsel, docket no. 19, lodged August 20, 2019); [Draft] Ex Parte Seizure Order 08.17.2019 (FINAL), docket no. 17, lodged August 20, 2019 (sent with August 17, 2019 email to court, docket no. 16, lodged August 20, 2019); [Draft] 4 Ex Parte Seizure Order 082219 B, docket no. 28, lodged August 23, 2019 (sent with August 22, 2019 email to counsel, docket no. 26).

[9] August 22, 2019 emails to and from counsel, docket no. 27, lodged August 23, 2019; August 23, 2019 email from counsel, docket no. __, lodged ____ (not yet lodged).

[10] Docket no. 4, filed under seal August 5, 2019.

containing trade secrets; and for 3) confiscation of a broad range of papers in relatively specific locations.[11] The second request carries too great a risk of violating the mandate of 18 U.S.C. § 1836(b)(2)(B)(ii) that an ex parte seizure order must:

> provide for the narrowest seizure of property necessary to achieve the purpose of this paragraph and direct that the seizure be conducted in a manner that minimizes any interruption of the business operations of third parties and, to the extent possible, does not interrupt the legitimate business operations of the person accused of misappropriating the trade secret . . . .

While the DTSA refers in two places to the possible seizure of "unrelated materials,"[12] the foregoing provision requires an order to be as narrow as possible.

After being presented with a revised order the court had prepared,[13] and a hearing,[14] Plaintiffs submitted supplemental materials and another draft order, with increased breadth, seeking seizure of many computer devices for imaging and delivery to the court, and seizure of a slightly broader range of papers from much less specifically defined locations.[15]

Plaintiffs have not delineated the nature or extent of any legitimate business of Defendants, nor have they specified the other legitimate uses of Defendants' computers and media. While Plaintiffs' submissions are very thorough, they do not disclose Defendants' legitimate operations, legitimate uses of the computers at issue; and legitimate papers and purposes of entities they control. The submissions also do not quantify the dollar amount of business lost to date by Defendants' possession of Plaintiffs' trade secrets, or the dollar volume of Plaintiffs' overall business. This missing information makes assessment of risk difficult. And

---

[11] Section A.2, [Draft] Ex Parte Seizure Order and Evidence Preservation Order, attachment no. 4 to Application, docket no. 4, filed under seal August 5, 2019.

[12] 18 U.S.C. § 1836 (b)(2)(D)(iii) and (iv).

[13] Ex Parte Seizure Order draft 080819, docket no. 20, lodged August 20, 2019.

[14] Minute entry, docket no. 13, August 9, 2019.

[15] Section A.2, [Draft] Ex Parte Seizure Order 08.17.2019 (FINAL), docket no. 17, lodged August 20, 2019.

risk of confusion is presented due to the similarity of names of entities controlled by Plaintiffs and Defendants. Nevertheless, given the lengthy history of prior dealings and litigation between Plaintiffs and Defendants, including specific adjudications involving some of these entities, as well as the transfer of Mr. Wright's interest in others,[16] the risk of interfering with the legitimate operation of the businesses run by Defendants (at least those at issue here)[17] appears to be very slight.

Nonetheless, significant effort has been made to minimize even that risk. The order drafts, hearing comments, and materials submitted have been carefully considered. This Order is narrower than the most recent draft from Plaintiffs and allows seizure of the specific computers identified as used by Linn Wright and Gary Slavens, and identifiable customer lists, while authorizing imaging of other computers and storage.

A challenge is presented because electronic data may easily be copied and may be stored in many devices and places. Backups and cloud storage make an effective "seizure" difficult to achieve. Plaintiffs have indicated they will move, after seizure, for injunctive relief, which will provide additional protections.[18] The hearing set in seven days[19] will afford an opportunity for examination of the Defendants, their computers, and papers, at which time a motion for additional protections may be considered.

---

[16] Section A.1., *infra*.

[17] Exhibit B, *infra*.

[18] Application at 3, fn. 1.

[19] Section A.5., *infra*.

**A. Ex Parte Seizure Order** ..................................................................................... **6**
  1.      Findings of Fact and Conclusions of Law ...................................................... 7
      a)   Plaintiffs' patient lists are protected trade secrets......................................... 7
      b)   Plaintiffs have taken reasonable efforts to protect their trade secrets............................ 9
      c)   Defendants misappropriated Plaintiffs' trade secrets and Plaintiffs are being harmed
         as a result.................................................................................................... 10
         *Linn Wright* ................................................................................................. 10
         *2014 Wright litigation* .................................................................................. 11
         *Gary Slavens* ................................................................................................ 12
         *Slavens discharge and litigation* .................................................................. 13
         *Testimony regarding Wright's use of Plaintiffs' patient list* ....................... 14
         *Chris Williams deposition* ............................................................................ 15
         *Testimony regarding laptop computer and briefcase* ................................... 15
         *Slavens computer and paper files for Four Corners customer lists* ............. 18
         *Slavens adjudicated lack of credibility* ....................................................... 20
      d)   Conclusions of Law .................................................................................... 20
  2.      Scope of Seizure ........................................................................................... 22
      a)   "Electronic Computer Devices" Defined .................................................... 23
      b)   "Seized Electronic Computer Devices" – Seizure of Specified Electronic Computer
         Devices......................................................................................................... 23
      c)   Imaging of Seized Electronic Computer Devices ....................................... 25
      d)   Imaging of Other Electronic Computer Devices ......................................... 25
      e)   Cloud Based Storage .................................................................................. 25
      f)   "Customer and Patient Lists" Defined ........................................................ 26
      g)   Seizure of Customer and Patient Lists ....................................................... 26
      h)   Copying/Scanning of Customer and Patient Lists ...................................... 27
      i)   No Undue Seizure ...................................................................................... 27
  3.      Order Protecting Seized Property ................................................................. 28
  4.      Guidance to Law Enforcement Officials Executing the Seizure, and Appointment of
  Copying Staff and Technical Experts .............................................................. 28
      a)   Time and Places of Seizure......................................................................... 29
      b)   Designation of Contact Counsel ................................................................ 30
      c)   Duty of Cooperation .................................................................................. 30
      d)   Technical Experts....................................................................................... 31
      e)   Copying Staff ............................................................................................. 33
  5.      Date for Seizure Hearing ............................................................................. 33
  6.      Security ........................................................................................................ 35
**B. Evidence Preservation Order**.......................................................................... **35**
  1.      Microsoft Corporation ................................................................................. 35
  2.      Google LLC .................................................................................................. 36
  3.      Defendants ................................................................................................... 37
**C. Conclusion** ...................................................................................................... **37**
**EXHIBIT A**......................................................................................................... **39**
**EXHIBIT B**......................................................................................................... **41**

## A.  Ex Parte Seizure Order

Pursuant to the DTSA, 18 U.S.C. § 1836(b)(2)(B), an ex parte seizure order must:

(i)     set forth findings of fact and conclusions of law required for the order;

(ii)    provide for the narrowest seizure of property necessary to achieve the purpose of this paragraph and direct that the seizure be conducted in a manner that minimizes any interruption of the business operations of third parties and, to the extent possible, does not interrupt the legitimate business operations of the person accused of misappropriating the trade secret;

(iii)   (I)     be accompanied by an order protecting the seized property from disclosure by prohibiting access by the applicant or the person against whom the order is directed, and prohibiting any copies, in whole or in part, of the seized property, to prevent undue damage to the party against whom the order has issued or others, until such parties have an opportunity to be heard in court; and

(II)    provide that if access is granted by the court to the applicant or the person against whom the order is directed, the access shall be consistent with subparagraph (D);

(iv)    provide guidance to the law enforcement officials executing the seizure that clearly delineates the scope of the authority of the officials, including:

(I)     the hours during which the seizure may be executed; and

(II)    whether force may be used to access locked areas;

(v)     set a date for a hearing described in subparagraph (F) at the earliest possible time, and not later than seven (7) days after the order has issued, unless the party against whom the order is directed and others harmed by the order consent to another date for the hearing, except that a party against whom the order has issued or any person harmed by the order may move the court at any time to dissolve or modify the order after giving notice to the applicant who obtained the order; and

(vi)    require the person obtaining the order to provide the security determined adequate by the court for the payment of the damages that any person may be entitled to recover as a result of a wrongful or excessive seizure or wrongful or excessive attempted seizure under this paragraph.

1. **Findings of Fact and Conclusions of Law**

The following facts and conclusions of law, based on the record at this time, in compliance with 18 U.S.C. § 1836(b)(2)(B), support this Order.[20]

a) *Plaintiffs' patient lists are protected trade secrets*

Four Corners Health Care Corp. ("Four Corners Utah") is in the business of providing home health care to beneficiaries of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA") and the Radiation Exposure Compensation Act ("RECA"). Among other things, the EEOICPA compensates current or former employees (or their survivors) of the U.S. Department of Energy, its predecessor agencies, and certain of its vendors, contractors and subcontractors, who were diagnosed with a radiogenic cancer, chronic beryllium diseases, beryllium sensitivity, or chronic silicosis, as a result of exposure to radiation, beryllium, or silica while employed at covered facilities. The EEOICPA and RECA are administered by the U.S. Department of Labor. Four Corners Utah is a registered provider of home health care services. Four Corners Healthcare, Inc. ("Four Corners Wyoming") and United Energy Workers Healthcare, Corp. ("United Energy Workers") are also in the business of providing home health care to beneficiaries of the EEOICPA and RECA and are also registered providers of home health care services by the U.S. Department of Labor. Mountain West Medical Supply, LLC ("Mountain West Medical Supply") is in the business of providing durable medical goods and equipment ("DME") to home health care recipients. Mountain West Medical Supply provides DME to most patients of Four Corners Utah, Four Corners Wyoming and United Energy

---

[20] The following findings are taken from the Application for Ex Parte Seizure and Preservation Orders (docket no. 4, filed under seal August 5, 2009) and the accompanying Joint Declaration of Travis Lynn Shumway and Chad L. Shumway (docket no. 5, filed under seal August 5, 2009), as well as the Supplemental Memorandum supporting the Application (docket no. 23, filed under seal August 23, 2019), the Declaration of J. Gregory Hardman (docket no. 25, filed under seal August 23, 2019), and the Joint Declaration of Michael Gutierrez and Trevor Haight and the Exhibits thereto (docket no. 30, filed under seal August 23, 2019).

Workers who are eligible to receive DME as a part of their approved compliment of medical care services. This means that a Mountain West Medical Supply customer list contains most customers of Plaintiffs.

Together, Four Corners Utah, Four Corners Wyoming and United Energy Workers comprise one of the largest home health care agencies for EEOICPA and RECA beneficiaries and collectively operate throughout all regions of the United States. Successful home health care companies serving eligible EEOICPA and RECA beneficiaries must expend substantial upfront sums of money and amounts of time to locate and qualify patients. Marketing efforts include mass mailings, direct mailings, online website, community center and residential health care facility presentations, and door-to-door contacting in communities thought to have substantial concentrations of potential beneficiaries. Furthermore, potential EEOICPA and RECA beneficiaries must be qualified for eligibility by the U.S. Department of Labor. Among other criteria, a home health care agency seeking to qualify the potential beneficiary (patient) must arrange for the person to receive a medical screening exam from a licensed medical doctor and hire a nurse to prepare a plan of care report. The physician's exam results and the nurse's plan of care report are then submitted by the home health care agency to the U.S. Department of Labor. If the potential beneficiary (patient) is deemed eligible for medical service benefits, the U.S. Department of Labor issues an authorization letter and the home health care agency may thereafter begin providing a particular complement of medical care services by contracting with licensed medical care providers (i.e., registered nurses, certified nurse assistants, physician assistants, therapists, etc.) at privately agreed-upon rates.

Providing home health care to beneficiaries of EEOICPA and RECA is highly competitive. Thus, any information known to a business in this field that is not readily

ascertainable gives an advantage to acquiring or generating patients and is very valuable. Plaintiffs were among the first home health care agencies providing services to patients under EEOICPA and are among the largest such businesses nationally. Consequently, the generation of patient lists for Plaintiffs constitute unique proprietary and confidential information. Plaintiffs' proprietary and confidential information and trade secrets are extremely valuable to them.

Plaintiffs have invested large amounts of time and resources, including millions of dollars, into developing their proprietary systems and methods for developing patients, which include valuable proprietary and confidential information and trade secrets, including, without limitation, market demographics research; backend parameters for social media and other online marketing platforms and methods not readily ascertainable by the public; web interface information for Plaintiffs' websites and platforms; proprietary empirical trial and error data/information developed through experimentation and fine tuning of patient generation systems; business, customer, medical care provider and vendor information and relationships; and other proprietary, confidential information and trade secrets, which are not publicly available or readily ascertainable by the public. Plaintiffs' proprietary confidential information and trade secrets provide them a tremendous advantage over competitors with respect to their ability to generate large numbers of high-quality patients.

b) *Plaintiffs have taken reasonable efforts to protect their trade secrets*

Plaintiffs have taken great care to protect and maintain the secrecy of their confidential and proprietary information, including by, among other things, requiring all employees and other business associates to enter into confidentiality, non-disclosure and non-solicitation agreements; protecting access to company systems by requiring passwords for access; and limiting access to confidential information and company systems to select trusted persons within the companies.

*c) Defendants misappropriated Plaintiffs' trade secrets and Plaintiffs are being harmed as a result*

*Linn Wright*

In early 2012, Plaintiff Mountain West Medical Supply hired Defendant Linn Wright. In February of 2012, Linn Wright, Travis Shumway and Chad Shumway entered into an operating agreement for Mountain West Medical Supply, whereby Travis Shumway became a thirty-five percent (35%) owner, Chad Shumway became a thirty-five percent (35%) owner, and Linn Wright became a thirty percent (30%) owner. However, shortly thereafter, the Shumways and Linn Wright decided to part ways. In March of 2013, the Shumways and Linn Wright entered into an Agreement for Purchase and Sale of Limited Liability Company Membership Interest ("MIPA"). The MIPA provided that Linn Wright would sell his thirty percent (30%) interest in Mountain West Medical Supply to the Shumways.

In Section 8.01 of the MIPA, Linn Wright acknowledged that by virtue of his affiliation with Mountain West Medical Supply and Four Corners Utah he had access to confidential and proprietary information of both companies. In Section 8.03 of the MIPA, Linn Wright covenanted that he would not "disclose, directly or indirectly to any person except authorized representatives of [Plaintiffs], the names, addresses or telephone numbers of, or any other information regarding, any present or past customer, client or account of the Company, nor shall [Linn Wright] divulge other confidential information concerning the Company's business." Under Section 8.04 of the MIPA, Linn Wright covenanted that he would not "directly or indirectly contact any past, present or future clients of contractors of the Company for the purposes of selling, marketing or offering his services whether directly or indirectly without prior written authorization or approval from [Plaintiffs Travis Shumway and Chad Shumway]." Under Section 8.06 of the MIPA, Linn Wright covenanted that he would "pay for any and all attorney

fees and costs associated with [Plaintiffs Travis Shumway and Chad Shumway's] enforcement of the confidentiality and non-compete provision of this Agreement . . . and liquidated damages . . . in the amount of 150% of [the] purchase price." Defendant Linn Wright and Plaintiffs Travis Shumway and Chad Shumway signed the MIPA, following which Plaintiffs Travis Shumway and Chad Shumway made the initial payment to Defendant Linn Wright. Defendant Audra Wright executed a "Consent of Spouse," in which she acknowledged having read and understood the MIPA.

*2014 Wright litigation*

However, in April of 2014, Linn Wright, the Shumways, and Mountain West Medical Supply entered into litigation to resolve disputes concerning the parties' obligations under the MIPA (the "MIPA Litigation"). The MIPA Litigation resulted in a settlement through mediation in September of 2014. During mediation, Defendant Linn Wright disclosed to Plaintiffs Travis Shumway and Chad Shumway that he had in his possession a printout of the patients of Mountain West Medical Supply. Due to the association between Mountain West Medical Supply and the other Plaintiff companies, namely, Four Corners Utah, Four Corners Wyoming and United Energy Workers, Linn Wright effectively had a confidential patient list for most all of Plaintiffs' patients. Linn Wright disclosed that he obtained this confidential patient list by logging into the U.S. Department of Labor EEOICPA payment center database. He maintained that he had accessed this payment center database utilizing Plaintiffs' confidential login and password information. Linn Wright claimed to have done so in order to verify whether Plaintiffs Travis Shumway and Chad Shumway were being truthful regarding their payment obligations under the MIPA. Plaintiffs Travis Shumway and Chad Shumway were incensed by this revelation and demanded that as a condition of settlement Linn Wright turn over the confidential

patient list and commit to never again access Plaintiffs' confidential patient list and propriety information.

The parties to the MIPA Litigation entered into a settlement agreement in November of 2014 (the "Settlement Agreement"), which resolved the Prior Litigation as applied to them. Pursuant to the Settlement Agreement Linn Wright executed an Affidavit of James Linn Wright regarding Protected Healthcare Information and Covenants and Obligations Related Thereto, dated November 17, 2014 (the "Wright Affidavit"). Under paragraph 11 the Wright Affidavit, Linn Wright stated as follows:

> I have delivered the paper printout copy of the Company's client patient list to the Company, which is the only copy of the Company's client patient list in my possession. [ ] . . . I further affirm and declare under penalties of perjury that I have retained no paper, electronic, digital or any other copies or facsimiles of the Company's client patient list or the multiple client patient medical billing histories. All such documents have been destroyed.

Under paragraph 13 of the Wright Affidavit, Linn Wright "covenant[ed] never again to access the Protected Patient Information of the Company." Under paragraph 14 of the Wright Affidavit, Linn Wright covenanted that his failure to abide the terms and covenants of his Affidavit would

> result in untold harms, penalties and claims against the Company and its owners, Travis Shumway and Chad Shumway[,] . . . the financial impact of such harms, penalties and claims against the Company and its owners [would be] difficult to assess and quantify[,] and for which he agreed to pay Two Hundred Fifty Thousand Dollars ($250,000.00) to the Company for [his] breach of any term or covenant of this Affidavit.

*Gary Slavens*

In December 2012, Defendant Gary Slavens was hired as CEO of Four Corners Utah. In or about May 2013, Defendant Gary Slavens entered into a written contract with Four Corners Utah whereby he acknowledged that, as CEO, he would be provided with confidential client

information which was to remain the exclusive property and control of Four Corners Utah. Defendant Gary Slavens covenanted not to directly or indirectly use, divulge, or otherwise disclose the confidential information.

*Slavens discharge and litigation*

In early 2015, Plaintiff Four Corners Utah, Travis Shumway and Chad Shumway discovered that Gary Slavens had embezzled significant sums of money from Four Corners Utah during his tenure as CEO as well as failed to properly discharge his duties as CEO. Consequently, Plaintiff Four Corners Utah fired Gary Slavens as CEO in April 2015. In December 2015, Gary Slavens filed a lawsuit against Plaintiffs Four Corners Utah, Four Corners Wyoming, Travis Shumway and Chad Shumway, alleging that he was the owner of Four Corners Utah's business operations in the State of New Mexico, among other claims. Plaintiffs Four Corners Utah, Travis Shumway and Chad Shumway filed a counterclaim against Gary Slavens and two related business entities organized by him into which the embezzled funds had been transferred, namely, Four Corners Health Care-NM, LLC, a New Mexico limited liability company, and Four Brothers Health Care, LLC, a New Mexico limited liability company. This action was adjudicated in the Fourth Judicial District Court in and for Utah County, Utah, Provo Department, civil number 150401868 (the "Gary Slavens Lawsuit").

In February 2018, Plaintiffs deposed Gary Slavens, individually and as the Utah Rule of Civil Procedure 30(b)(6) designee for his companies. A few months before these depositions, Plaintiffs' attorneys issued subpoenas duces tecum to various banks at which Gary Slavens or his related business entities held accounts. Among the produced bank records were copies of several checks totaling more than $70,000 from Linn Wright's wife, Audra Wright, or Linn Wright's company, Energy Workers of America Healthcare, LLC, which were signed by Linn Wright or

Audra Wright and made payable to Gary Slavens or his company, Four Brothers Health Care, LLC. During his depositions, Gary Slavens initially testified that neither he nor his companies had ever had any business or financial dealings with Linn Wright, or any company associated with Linn Wright. Gary Slavens claimed the checks he received were payments for medical office furnishings he had sold to Linn Wright, the details of which transaction he struggled to explain.

A few months later, on June 21, 2018, Audra Wright was subpoenaed for a deposition in the Gary Slavens Lawsuit. She testified that neither she nor her husband, Linn Wright, nor any of their businesses had ever purchased used medical office furnishings from Gary Slavens or any company associated with him. She further testified the aforementioned checks made payable to Gary Slavens or his company were to reimburse Gary Slavens for his efforts and to purchase a vehicle for him in furtherance of organizing and operating a home health care agency in the State of New Mexico which would compete with Plaintiffs, to be owned and operated by Gary Slavens and her. During her deposition, Audra Wright also testified that in approximately August of 2016 she prepared three separate provider applications to the U.S. Department of Labor as manager of Four Corners Health Care-NM, LLC (a company organized by Gary Slavens), to operate a home health care agency in the State of New Mexico for EEOICPA and RECA beneficiaries. She further testified that this intended business venture was between Gary Slavens, Linn Wright and her, and Linn Wright instructed her how to fill out and submit the provider application forms.

*Testimony regarding Wright's use of Plaintiffs' patient list*

In additional depositions conducted during the Gary Slavens Lawsuit, Linn Wright's former business partners in Mountain Medical Supply, LLC, and Energy Workers of America Healthcare, LLC, testified that Linn Wright had, contrary to the covenants in Linn Wright's

November 17, 2014 Affidavit, retained Plaintiffs' confidential patient list. Linn Wright's former business partners testified that Linn Wright told them he had Plaintiffs' patient list in his possession and approached them about doing some type of a home health care agency joint venture with Gary Slavens in the State of New Mexico to service Four Corners Utah's patients in New Mexico. In September of 2016, Linn Wright's former business partners severed their relationship with him. Afterward, Linn Wright, through his company ALW Healthcare Consulting, LLC, became the sole owner of Energy Workers of America Healthcare, LLC, and the others became the owners of Mountain Medical Supply, LLC.

*Chris Williams deposition*

Plaintiffs also deposed Chris Williams, who became an inside business associate of Linn Wright following the restructured ownership of Energy Workers of America Healthcare, LLC, and Mountain Medical Supply, LLC. Chris Williams testified that he began working for Linn Wright and his companies as a "marketer" (i.e., patient recruiter) in September 2015. After Linn Wright severed the ownership of Energy Workers of America Healthcare, LLC, and Mountain Medical Supply, LLC, Chris Williams continued working with Linn Wright in Energy Workers of America Healthcare, LLC, for nearly two additional years. During this time, Chris Williams became intimately involved in all of Linn Wright's ongoing, developing and prospective home health care business operations.

*Testimony regarding laptop computer and briefcase*

Chris Williams testified that Linn Wright frequently spoke of his disdain for Plaintiffs and that Linn Wright had some sort of a "noncompete" with Plaintiffs. Most notably, Chris Williams testified that Linn Wright maintains on his laptop computer an electronic file with patient names and other confidential patient information (i.e., addresses, U.S. Department of

Labor numbers, Social Security numbers, birthdates and "everything needed to bill a patient") of Plaintiffs, which computer files were exhibited to Chris Williams during multiple meetings with Linn Wright. Linn Wright told Chris Williams that he had taken this confidential patient information from every prior home health care company or DME company serving EEOICPA and RECA beneficiaries with which he had been associated. According to Chris Williams, such confidential patient information is maintained in separate electronic files by unique company name (e.g., "Four Corners"). Linn Wright periodically "bragged" that the confidential patient list on his laptop computer contains "over 500 names," and he could "bill every one of those names for six months and then run off to Belize or a non-extradition [country]." Chris Williams further testified that Linn Wright has a black briefcase/computer bag in which he maintains hard copies of various confidential documents from his previous employers, including Plaintiffs, which paper files were exhibited to Chris Williams during multiple meetings with Linn Wright.

Chris Williams testified that Linn Wright, Audra Wright, and Gary Slavens were working on a business venture whereby they organized a company called "Four Brothers Healthcare, LLC," for the purpose of trying to solicit all of Four Corners Utah's patients in New Mexico and Arizona. This group offered Chris Williams the position of being the person primarily responsible for soliciting and trying to switch these patients from Four Corners Utah to Four Brothers Healthcare, LLC. Chris Williams confirmed that Linn Wright put Gary Slavens on the payroll of Energy Workers of America Healthcare, LLC, for this purpose prior to the revised formation of Four Brothers Healthcare, LLC. Audra Wright was made a 51% owner of Four Brothers Healthcare, LLC, and Gary Slavens was made a 49% owner, so that the Wrights would have operational control of the business.

Chris Williams further testified that in or about June 2017, Linn Wright sold the assets of Energy Workers of America Healthcare, LLC, for an amount in excess of $2 million to a company called Legacy Home Health, LLC. Chris Williams was one of the "assets" that was sold to Legacy Home Health, LLC, and as such, he worked as a liaison between the transacting parties. During the months following the sale, significant disputes arose between the parties concerning the truthfulness of representations made by Linn Wright in conjunction with the sale of patients and assets to Legacy Home Health, LLC. As a result, Linn Wright and Legacy Home Health, LLC, began to negotiate the transfer of additional patients to Legacy Home Health, LLC, in an effort to settle the parties' dispute. Audra Wright recorded some of these negotiations on her mobile phone.

On one occasion Linn Wright presented Chris Williams with a list of 16 patients from the Casper, Wyoming area from Plaintiffs' confidential patient list who were all receiving services from one or more of Plaintiffs Four Corners Utah, Four Corners Wyoming, or United Energy Workers. The list of patients had a title or header at the top entitled "Four Corners Healthcare." Linn Wright directed Chris Williams to solicit each of these patients for the purpose of trying to switch them to Legacy Home Health, LLC, for their home health services. According to Chris Williams, Linn Wright thought that by converting this number of patients to Legacy Home Health, LLC, he could settle the brewing lawsuit.

On another occasion Linn Wright presented Chris Williams with a photocopy of a "Four Corner Health Care, Inc." agreement for a patient in Grand Junction, Colorado, who Linn Wright directed Chris Williams to solicit for the purpose of switching home health care agencies. Additionally, Chris Williams testified that Linn Wright contemporaneously accessed his laptop computer in Chris Williams' presence and gave him the names of four additional Four Corners

Utah patients residing in the same area and directed him to solicit them, too. After receiving these names from Linn Wright, Chris Williams handwrote them on the top left-hand corner of the aforementioned Admission Service Agreement. This confidential patient record was among the documents Chris Williams produced in response to the subpoena duces tecum. According to Chris Williams, Legacy Home Health, LLC, eventually declined Linn Wright's offer to accept some number of Plaintiffs' confidential patients in satisfaction of their dispute and, instead, filed a lawsuit against Linn Wright and Energy Workers of America Healthcare, LLC.

Following Chris Williams' deposition, Plaintiffs contacted an owner of Legacy Home Health, LLC, who substantially confirmed the details of Chris Williams' deposition testimony, including by forwarding to Plaintiff Chad Shumway an email conversation of February 19-20, 2018, in which Legacy Home Health, LLC, and Linn Wright discussed the number of patients from other home health care agencies that Linn Wright would provide as a part of a proposal to settle their dispute.

*Slavens computer and paper files for Four Corners customer lists*

The Gary Slavens Lawsuit was tried to a jury between April 15 and April 26, 2019. During cross-examination on April 25, 2019, Gary Slavens testified that he "took all of New Mexico's stuff" with him when he was terminated as the CEO of Four Corners Utah. When asked to clarify what information he had, Gary Slavens affirmed that he continues to maintain a complete file for every single Four Corners Utah patient in the state of New Mexico, including their Department of Labor information and their Social Security numbers. He testified that he has this information both in paper in a filing cabinet in his Springville, Utah home and electronically on his computer. Gary Slavens has not returned any of this information to Plaintiffs.

On June 18, 2019, the Honorable Thomas Low, Fourth Judicial District Court Judge, entered an Amended Judgment in the Gary Slavens Lawsuit against Gary Slavens, affirming sanctions under a previous order finding Gary Slavens in contempt for failing to obey court orders. The court further ruled that neither Gary Slavens nor his companies had any interest in Plaintiffs' business interests as follows:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Four Corners Health Care Corp., a Utah corporation, is the owner of *all home health care agency operations* within the State of New Mexico, as well as all other states in which said corporation has heretofore operated and currently operates; that neither Gary D. Slavens, nor Four Corners Health Care—NM, LLC, a New Mexico limited liability company, nor Four Brothers Health Care, LLC, a New Mexico and Utah limited liability company, has any right, title or interest in *any home health care agency operations* within the State of New Mexico; that Four Corners Health Care Corp., a Utah corporation, may work directly with the New Mexico Department of Health to obtain the issuance or reissuance, as the case may be, of Operator's License #3441 for the Shiprock, New Mexico "Parent" office with the Ownership Name of "Four Corners Health Care Corp., a Utah corporation" (with Travis Lynn Shumway and Chad L. Shumway listed as greater than 5% owners of said corporation), and under the operator name of "Four Corners Health Care Corp."; that Four Corners Health Care Corp., a Utah corporation, may work directly with the New Mexico Department of Health to obtain the issuance or reissuance, as the case may be, of Operator's License #3456 for the Milan, New Mexico "Branch" office with the Ownership Name of "Four Corners Health Care Corp., a Utah corporation" (with Travis Lynn Shumway and Chad L. Shumway listed as greater than 5% owners of said corporation), and under the operator name of "Four Corners Health Care Corp."[21]

Defendants' misappropriation and unauthorized use of Plaintiffs' trade secrets and confidential information has caused and further threatens irreparable injury to Plaintiffs, and an ex parte seizure order is necessary to preserve evidence so that Plaintiffs can obtain appropriate relief.

---

[21] *(emphasis added).*

*Slavens adjudicated lack of credibility*

In an order dated February 2, 2018, Judge Thomas Low made pertinent findings

regarding Slavens' lack of credibility.

> Plaintiff Slavens commenced this action and sought a temporary restraining order based on, in significant part, an intentional misstatement of fact commonly known as a lie. . . .
> Slavens' disclosures continue to exhibit some level of dishonesty toward the Court. . . . Had Slavens purposely calculated to incur contempt, he could not have done so more effectively than he has in this case.
> As a side note, the Court assumes that this litigation appears to be a serious matter for Plaintiff Slavens, but he seems to be prosecuting it in a manner that makes it look like he considers it to be a game. It began with gamesmanship when he filed a meritless motion for a temporary restraining order that contained an egregious misstatement of fact, and it continued with a refusal to withdraw that misstatement even after being presented with clear proof of its falsity. That exhibited not only an intention to lie but also a willingness to refuse to acknowledge truth after being shown it. This conduct was followed by a failure to even attempt to comply with the Court's Order re: Rule 11 Motion.[22]

d) *Conclusions of Law*

Based on the foregoing, the court finds as follows:

a. This court has jurisdiction over the subject matter of this case pursuant to the

DTSA and 28 U.S.C. § 1331 and has personal jurisdiction over all parties hereto.

Venue is proper pursuant to 28 U.S.C. § 139l(b).

b. The Complaint[23] states a claim upon which relief may be granted against

Defendants under the DTSA.

c. Equitable and injunctive relief other than ex parte seizure would be inadequate to

achieve the purpose of preserving paper and digital files and data containing

Plaintiffs' trade secrets and evidence of misappropriation in this case. Defendants

---

[22] Order of Contempt Against Gary D. Slavens, Exhibit 20 to Supplemental Memorandum (docket no. 23, filed under seal August 23, 2019).

[23] Docket no. 1, filed under seal August 5, 2019.

have shown a willingness to provide false and misleading information, including false information to conceal their identity and involvement in business entities and other actions. Furthermore, Defendants have shown a willingness to hide information and move paper and computer files rather than comply with covenants in written agreements with Plaintiffs concerning their proprietary and trade secret materials. Thus, it appears that Defendants would evade, avoid, or otherwise not comply with an order issued pursuant to Rule 65, Fed. R. Civ. P., or other equitable remedy.

d.  If an ex parte seizure were not ordered, Plaintiffs would almost certainly suffer immediate and irreparable harm due to Defendants' actions. Injury to Plaintiffs would include a continued disadvantage in the marketplace and destruction of probative evidence.

e.  It clearly appears that Defendants are in actual possession of Plaintiffs' trade secrets and evidence relating to the misappropriation of those trade secrets, including patient lists and patient records.

f.  Defendants have engaged in activities competitive to Plaintiffs using trade secrets of Plaintiffs, through entities with names designed to create confusion with business entities controlled by Plaintiffs. Seizure of records therefore must be directed to general entity names to ensure complete collection of relevant data.

g.  There is a high risk that Defendants will destroy, move, hide, or otherwise render inaccessible Plaintiffs' trade secrets and evidence relating to Defendants' misappropriation of those trade secrets in the absence of an ex parte seizure.

h.  The balance of hardships in granting an ex parte seizure weighs heavily in Plaintiffs' favor.

i.  While Defendants will suffer some hardship as a result of the ex parte seizure, they will suffer no undue hardship or harm.

j.  It is unlikely that the seizure of copies of paper and electronic/digital files and data or imaging of Defendants' computer devices will harm any third parties. In fact, patient privacy interests will be protected by the seizure.

k.  Plaintiffs have not publicized the requested seizure.

l.  Plaintiffs are very likely to succeed in showing that the files, data, and information at issue are protectable as trade secrets.

m.  Plaintiffs are very likely to succeed in showing that Defendants misappropriated trade secrets and confidential information by improper means, as provided by the DTSA.

n.  The specific matters to be seized are described with reasonable particularity both in Plaintiffs' Application[24] and in this Order below.

o.  The facts here demonstrate extraordinary circumstances wherein an ex parte seizure is warranted, as contemplated by the DTSA.

## 2.  Scope of Seizure

"[T]he narrowest seizure of property necessary to achieve the purpose" of the seizure shall be conducted, in a manner that "minimizes any interruption of the business operations of third parties and, to the extent possible, does not interrupt the legitimate business operations of

---

[24] Docket no. 4, filed under seal August 5, 2019.

the person accused of misappropriating the trade secret."[25] In particular, only the property described in sections a) through i) below shall be seized, and then only in the manner described therein, and only for purposes of preservation and later discovery.

The seizures from Defendants shall take place identically for each Defendant as follows:

a) *"Electronic Computer Devices" Defined*

The term "Electronic Computer Devices" means all electronic computer devices, including desktop computers, laptop computers, tablets, smartphones, and any associated external storage devices, including removable disks and portable drives found in the immediate area of the desktop computers and laptop computers.

b) *"Seized Electronic Computer Devices" – Seizure of Specified Electronic Computer Devices*

Two types of Electronic Computer Devices (and any associated external storage devices, including removable disks and portable drives found in the immediate area of the desktop computer and laptop computer hereafter identified), if found to be in the possession of any Defendant or located within the premises to be searched, are to be seized by Federal law enforcement officials and delivered to the possession of the technical experts. These Seized Electronic Computer Devices (which include any associated external storage devices, including removable disks and portable drives found in the immediate area of these computer types) are:

      i.   the laptop computer and briefcase used by Linn Wright as described in the section of this order titled "Testimony regarding laptop computer and briefcase" at pages 15-17; and

---

[25] 18 U.S.C. § 1836(B)(ii).

ii.     the computer of Gary Slavens described in the section of this order titled "Slavens computer and paper files for Four Corners customer lists" at page 18.[26]

A photograph will be taken, and a chain of custody form will be completed, for each of these Seized Electronic Computer Devices (which include any associated external storage devices, including removable disks and portable drives found in the immediate area of these computer types) by the technical expert (as hereafter described) assisting the Federal law enforcement officers executing the seizure. The chain of custody form will at a minimum contain the following information: date, approximate time, and place of seizure; claimed or reputed owner; brand, model, and serial number; passwords and login credentials, as applicable; and description of the general condition. After photographs and chain of custody forms have been completed for both Seized Electronic Computer Devices (which include any associated external storage devices, including removable disks and portable drives found in the immediate area of these computer types), the technical experts assisting Federal law enforcement officers will ensure that all passwords, login credentials, and other information provided to them by Defendants (as hereafter explained) are functional and the technical experts have full and unlimited access and ability to operate both of the Seized Electronic Computer Devices. Thereafter, the Seized Electronic Computer Devices (which include any associated external storage devices, including removable disks and portable drives found in the immediate area of these computer types) will be safely and securely packaged into a container for later imaging (as explained hereafter) and delivery into the control of the court.

---

[26] If more than one laptop computer is found in the possession of Linn Wright, or within the residential and/or business premises pertaining to him (page 29), or more than one desktop computer is found in the possession of Gary Slavens, or within the residential premises pertaining to him (page 29), all such devices must be seized.

c) *Imaging of Seized Electronic Computer Devices*

The technical experts will transport the Seized Electronic Computer Devices to the technical experts' place of business whereupon they will make exact digital copies (images) of all files and data on the Electronic Storage Devices, including data on any networks linked to the Electronic Storage Devices, onto a separate digital storage device. The imaging of Electronic Computer Devices and any copying of files from any associated networks shall be done to preserve metadata and maintain files in their native format.

d) *Imaging of Other Electronic Computer Devices*

Other Electronic Computer Devices found in the possession of Defendants shall not be seized by possession, but shall be seized only by imaging conducted on the site where the device is found. A photograph will be taken, and a chain of custody form will be completed, for each of these Electronic Computer Devices by the technical expert (as hereafter described) assisting the Federal law enforcement officers executing the seizure. The chain of custody form will at a minimum contain the following information: date, approximate time, and place of imaging; claimed or reputed owner; brand, model, and serial number; passwords and login credentials, as applicable; and description of the general condition. After photographs, chain of custody forms, and imaging have been completed for these Electronic Computer Devices, these Electronic Computer Devices will be left in place, and the image media will be safely and securely packaged into a container for retention by the technical expert as agent for the court under the control of the court.

e) *Cloud Based Storage*

To effectuate seizure of Plaintiffs' trade secrets on any cloud-based storage facilities, the Federal law enforcement officers, with any necessary assistance from the third-party technical experts, are directed to temporarily change the passwords to the cloud locations or specific

folders housing Plaintiffs' patient lists in the most reasonably narrow manner available that also fully protects the seized information from access until the matter can be addressed at a hearing within seven (7) days of seizure. *See* 18 U.S.C. § 1836(b)(2)(D)(ii). The third-party technical experts are further directed to follow the procedures previously described in Section 2(d) of this Order to create an image of the slavensgary@gmail.com email account for Gary Slavens and the altawright@hotmail.com email account for James Linn Wright.

  *f)*  *"Customer and Patient Lists" Defined*

  The term "Customer and Patient Lists" means all customer or patient lists, individually or within and including any paper files, located within any filing cabinets, computer bags, briefcases, desks or anywhere else where such papers may be found within the premises to be searched for the seizure, which are named, identified, classified, or contain titles or names of Plaintiffs and the entities associated with Plaintiffs or Defendants as shown in Exhibit B.

  *g)*  *Seizure of Customer and Patient Lists*

  All Customer and Patient Lists found to be in the possession of any Defendant or located within the premises to be searched are to be seized by Federal law enforcement officials. A chain of custody form will be completed for the Customer and Patient Lists by the Federal law enforcement officers executing the seizure. The chain of custody form will at a minimum contain the following information: date, approximate time, and place (including container) of seizure; claimed or reputed owner; number of pages seized; and general description of the Customer and Patient Lists. After the chain of custody forms have been completed for all Customer and Patient Lists, the Federal law enforcement officers will safely and securely place the Customer and Patient Lists into a container for later scanning (as explained hereafter) under the control of the court.

*h) Copying/Scanning of Customer and Patient Lists*

Federal law enforcement officers will then promptly deliver all of the Customer and Patient Lists to the Copying Staff (as hereafter described). Within twenty-four hours following receipt from the Federal law enforcement officers, Copying Staff will then scan all of the Customer and Patient Lists. As soon as Copying Staff has scanned all of the Customer and Patient Lists, Federal law enforcement officers will collect all of the Customer and Patient Lists and an electronic image (CD, thumb drive, etc.) of the scanned Customer and Patient Lists from the Copying Staff and deliver these items to the technical expert under the control of the court.

The Seized Electronic Computer Devices, images of the other Electronic Computer Devices, seized Customer and Patient Lists, and scans of the Customer and Patient Lists will then be retained in the technical expert's custody for preservation and protection as agent for the court, and for later digital forensics and discovery to identify any unauthorized possession and use by Defendants of Plaintiffs' trade secrets and other proprietary and confidential information.

*i) No Undue Seizure*

Based on the evidence provided in Plaintiffs' Application,[27] there is no lawful reason for Defendants to be in possession of any patient lists and patient records of the Plaintiffs, making confiscation and preservation of such records for further court proceedings appropriate. Seizure of Defendants' Seized Electronic Computer Devices and imaging of Defendants' Other Electronic Computer Devices, and Customer and Patient Lists, as outlined in subparagraphs a) through i) above is the least intrusive means of achieving this important objective. Law enforcement officials will proceed with the seizure at the time and place specified below, and in

---

[27] Docket no. 4, filed under seal August 5, 2019.

the most efficient manner possible to minimize disruptions to Defendants' legitimate business operations and to any third parties.

### 3. Order Protecting Seized Property

After the Electronic Computer Devices and Customer and Patient Lists are imaged and scanned, the images shall be held by the technical expert under the custody and control of this court. Until Plaintiffs and Defendants have an opportunity to be heard in court, access to the Seized Electronic Computer Devices, images of other Electronic Computer Devices, Customer and Patient Lists, and images and scans of the Customer and Patient Lists by Plaintiffs and Defendants shall be prohibited and no additional copies, in whole or in part shall be made. The technical expert as agent for the court shall secure the Seized Electronic Computer Devices, Customer and Patient Lists, and images and scans of each, from physical and electronic access. Any hard drive or other storage medium on which the seized digital files or images reside must not be connected to a network or to the Internet without consent of both Plaintiffs and Defendants, until after a hearing on the matter takes place. The court shall protect the confidentiality of seized materials that are unrelated to the trade secret information ordered seized, unless the Defendant from which the material was seized consents to disclosure of the material. To the extent that Plaintiffs' counsel becomes aware of any files, documents, or information seized, those files, documents and information shall be treated as Confidential-Attorneys' Eyes Only under the court's standard protective order.

### 4. Guidance to Law Enforcement Officials Executing the Seizure, and Appointment of Copying Staff and Technical Experts

One or more Federal law enforcement officers from the U.S. Marshals Service shall oversee and take the following measures in the seizure of Defendants' Electronic Computer Devices and Customer and Patient Lists located at Defendants' residences and places of business

as further detailed below. The Federal law enforcement officer(s) may use reasonable force for the protection of persons and the premises where the seizure is to take place and to generally provide for a safe environment for conducting the seizure. Federal law enforcement officers may also use reasonable force to access the homes or business office and to access any locked area or to prevent anyone from accessing the Electronic Computer Devices and Customer and Patient Lists subject to inspection and copying during the seizure.

a) *Time and Places of Seizure*

The Federal law enforcement officers shall, with the assistance of the court-appointed copying staff and technical experts, commence or endeavor to commence the seizure on the 26th day of August, 2019, starting at the hour of 8:00 AM, or as soon thereafter as reasonably practicable, but no later than three calendar days after entry of this order, at Defendants' residences:

Defendants James Linn Wright and Audra Wright
557 South 900 East,
Santaquin, Utah 84655

Defendant Gary D. Slavens
2558 East 700 South
Springville, Utah 84663

and shall continue until completion of the seizure at these locations. As soon thereafter as reasonably practicable, the seizure shall continue (or may proceed simultaneously as time and resources permit) at Defendant James Linn Wright's business office (aka ALW Healthcare Consulting, L.L.C., aka Energy Workers of America Healthcare, L.L.C.) located at 828 South 1040 West, Payson, Utah 84651. In the event the Federal law enforcement officers are unable to complete the seizure upon initial search, they may return to complete the seizure, and in any event the seizure must take place within three (3) calendar days following entry of this Order.

*b) Designation of Contact Counsel*

Plaintiffs' counsel must not be present on the premises during the seizures. The U.S. Marshals shall direct any questions regarding the seizure process to the court. Plaintiffs' counsel must be available by telephone at the time of the seizures. Plaintiffs' counsel has designated two attorneys to serve as primary contacts for the seizure. Their names, business addresses, email addresses and mobile telephone numbers have been provided to the court.

*c) Duty of Cooperation*

Defendants and all persons present at the seizure premises shall cooperate with the Federal law enforcement officers and are hereby ordered to disclose and provide to the Federal law enforcement officers all Electronic Computer Devices and Customer and Patient Lists, and all login credentials (including passwords), biometrics (fingerprints, retina scans, facial scans or the like) or other information needed or reasonably requested for consummation of the seizure, including information necessary for the technical expert to access Defendants' digital files, computers, folders, and networks. The technical expert(s) shall preserve such login information and provide it to the court but shall otherwise keep it confidential and not disclose it to Plaintiffs. If any Defendant or other person at the seizure location refuses to provide or disclose all Electronic Computer Devices and Customer and Patient Lists, and associated login credentials (including passwords) needed for consummation of the seizure, the Federal law enforcement officers may conduct a reasonable search of the premises to locate such computers, computer devices, or login credentials. Refusal by any Defendant or person to cooperate with the Federal law enforcement officers by refusing to provide all Electronic Computer Devices and Customer and Patient Lists, and associated login credentials (including passwords) needed for consummation of the seizure shall be grounds for being held in contempt of this order and subject to appropriate sanctions.

Defendants and any of their family members, employees, affiliates, contractors, other persons working for or residing with Defendants, and any persons at the premises where the seizure is to take place when commenced, shall be prohibited from leaving the premises or accessing any Electronic Computer Devices or Customer and Patient Lists after they have been provided to or located by the Federal law enforcement officers while the seizure is taking place; provided, however that Defendants shall be permitted to make a call to his or her legal counsel using a phone provided by the Federal law enforcement officers or technical experts onsite. In the event that any person at the premises is required to leave for medical attention, safety, or other good cause, the Federal law enforcement officers may permit such person to leave; provided that the person shall not be permitted to leave with any Electronic Computer Devices and Customer and Patient Lists and shall not be able to return to the premises until after completion of the seizure. State or local law enforcement officials may participate and assist in the seizure if the Federal law enforcement officers determine it is needed, however, neither the Plaintiffs nor any of their representatives or associates shall be present during the seizure nor will they be allowed to participate in the seizure in any way.

d) *Technical Experts*

Participation of a technical expert in the seizure will aid the efficient execution of and minimize the burden of the seizure. Michael Gutierrez of Xact Data Discovery (address: 30 East Broadway, Suite 300, Salt Lake City, UT 84111; email address: mgutierrez@xactdatadiscovery.com; telephones 469-351-8065 (office) and 801-949-4264 (mobile)), and Trevor Haight of Xact Data Discovery (address: 30 East Broadway, Suite 300, Salt Lake City, UT 84111; email address: thaight@xactdatadiscovery.com; telephones 801-851-5286 (office) and 801-718-5255 (mobile)), or both, or other similarly qualified person(s) from Xact Data Discovery, who Plaintiffs verify have no affiliation with Plaintiffs, are hereby

appointed as a technical expert(s) under 18 U.S.C. § 1836(b)(2)(E), to accompany the Federal law enforcement officer(s) during the seizure. The technical expert(s) must execute within one day of the date of this order and shall be bound by the court-approved non-disclosure agreement, attached hereto as **Exhibit A**. The technical expert(s) shall bring at least four external hard drives or other storage devices having at least 2-4 TB of storage space each to the seizure, on which "images" of the devices and copies of files from any associated networks may be stored. The images of devices and copies to be made may include, but are not limited to, full images of any and all Electronic Computer Devices, and copies from any associated networks, including, without limitation, any data files, code, software, hidden files, image files, emails, audio recordings, chats (including Skype chats), other electronic communications and documents, on any and all networks associated with the Electronic Computer Devices on the premises, whether such Electronic Computer Devices are in plain sight, stored in bags, drawers or closets, including but not limited to laptop computers, tablet computers, servers, desktop computers; "cloud" or other online storage folders (including Dropbox files and folders, Google Drive, OneDrive, iCloud, or similar online storage) and their contents; server accounts; and any associated networks.

Plaintiffs shall reimburse the technical expert(s) for the cost of the hard drive(s) or other storage device(s) used and for the reasonable fees and costs to accomplish the seizure. After the seizure, Defendants shall be allowed to resume their normal course of business, subject to any other orders of this court, and their legal obligations which are unaffected by this Order. The Seized Electronic Computer Devices and images shall be held by the technical expert as agent for this court's custody and control.

*e) Copying Staff*

Participation of copying staff who Plaintiffs verify have no affiliation with Plaintiffs in the seizure will aid the efficient execution of and minimize the burden of the seizure. Court Curtis of Orange Document Services (address: 30 East Broadway, Suite 203, Salt Lake City, UT 84111; email address: ccurtis@orangedocs.com; telephones 801-415-9663 (office) and 801-347-9729 (mobile)), or other similarly qualified person(s) from Orange Document Services, who Plaintiffs verify have no affiliation with Plaintiffs, are hereby appointed as a copying staff. Plaintiff shall engage and compensate the copying staff and, in advance of the seizure, provide the copying staff with this Order. The copying staff must execute within one day of the date of this order and shall be bound by the court-approved non-disclosure agreement, attached hereto as **Exhibit A**. After the seizure, Defendants shall be allowed to resume their normal course of business, subject to any other orders of this court, and their legal obligations which are unaffected by this Order. The copy staff will scan all of the Customer and Patient Lists and thereafter shall immediately deliver all of the Customer and Patient Lists and the electronic image (CD, thumb drive, etc.) of the scan of the Customer and Patient Lists by hand to the technical expert as agent for the court's custody and protection. The Customer and Patient Lists and the electronic image of the scan of the Customer and Patient Lists shall not be delivered to anyone else without prior order of the court.

**5.    Date for Seizure Hearing**

A hearing according to 18 U.S.C. § 1846(B)(v) and (F) is set for the 3rd day of September 2019 at 9:00 AM at the United States District Court, 351 South West Temple, Salt Lake City, Utah, which is after the time period for accomplishing the seizure, and not later than seven (7) days after this order issues.

At this hearing,

a.  Defendants must present the original Electronic Computer Devices not seized and be prepared to offer oral testimony;

b.  The technical expert(s) must be present and, to the extent reasonably possible, depending on the date the seizure actually takes place and the amount of data seized, be prepared to identify files in the Seized Electronic Computer Devices and other Electronic Computer Devices which contain Plaintiff's trade secrets, and also be prepared to delete those files after Defendants are heard.

c.  Plaintiffs must produce the Mountain West Medical Supply, Four Corners Utah, Four Corners Wyoming, and United Energy Workers customer lists as they existed in March 2013 (when Linn Wright last had rightful access to any of them) and April 2015 (when Gary Slavens last had rightful access to any of them), for in camera review by the court and, if appointed, by the special master.

Pursuant to the DTSA, Defendants and any others harmed by this Order may consent to a later date for the hearing, and "a party against whom the order has issued or any person harmed by the order may move the court at any time to dissolve or modify the order after giving notice to the applicant [Plaintiffs] who obtained the order."[28]

Defendants may identify any files and information on any Electronic Computer Devices or images thereof or Customer and Patient Lists that are in the custody of the court and are of a personal or privileged nature, are irrelevant to the subject matter of this case, or are otherwise not entitled to protection as a trade secret and therefore are not subject to seizure under the DTSA. Defendants may identify such files and information to the court prior to the hearing and will be provided an opportunity during the hearing to raise any objections regarding discovery of such files and information. Any opposition memorandum or motion or stipulation to continue the hearing must be filed at least 24 hours before the scheduled hearing. Materials as to which objections are sustained shall not be made available to the Plaintiffs.

---

[28] 18 U.S.C. 1836 (b)(2)(B)(v)

**6.** **Security**

Plaintiffs are directed to provide to the court within 24 hours of this Order a security in the amount of Ten Thousand Dollars ($10,000), for the potential payment of damages that any person may be entitled to recover as a result of a wrongful or excessive seizure or attempted seizure. Additional security will not be required at this time. The court will hold this security until after the Seizure Hearing described in section 5 above is completed and the court makes any related decision.

**B.** **Evidence Preservation Order**

**1.** **Microsoft Corporation**

The court also ORDERS third party Microsoft Corporation (or such other related entity as controls the accounts referenced in this Order) to make digital copies of all files, including previously deleted files, residing in any Microsoft Corporation accounts of Defendants James Linn Wright, including, but not limited to any web hosting, email, and cloud storage accounts associated with Defendant James Linn Wright and his email addresses, including altawright@hotmail.com. Microsoft Corporation is also ORDERED to provide reports of all historical activities (e.g., deletion of files and folders, creation of files and folders, etc.) on the accounts of Defendant James Linn Wright, including, but not limited to any accounts related with the above-referenced email address(es). Microsoft Corporation shall provide such copies and reports to this court for preservation within two (2) business days following entry of this order. The copies and reports shall not be delivered to anyone else without prior order of the court. While this order mentions specific email addresses for Defendant James Linn Wright, this Order shall apply to any Microsoft Corporation accounts held by Defendant James Linn Wright during the past sixty (60) months. **Microsoft Corporation shall provide NO notice of the**

**copying and reporting to any of the Defendants.** Upon entry of this Order, Plaintiffs shall promptly serve this Order on the Utah registered agent of Microsoft Corporation.

IT IS FURTHER ORDERED that Microsoft Corporation shall make digital copies of all files, data, emails and other electronic communications in the Microsoft accounts of Defendant James Linn Wright. All seized and copied files shall be immediately delivered to the custody of this court. These materials will be reviewed for relevance and privilege before any production to Plaintiffs is made.

IT IS FURTHER ORDERED that the furnishing of such information and assistance shall be compensated for by Plaintiffs.

2.     **Google LLC**

The court also ORDERS third party Google LLC (or such other related entity as controls the accounts referenced in this Order) to make digital copies of all files, including previously deleted files, residing in any Google LLC accounts of Defendant Gary D. Slavens, including, but not limited to any web hosting, email, and cloud storage accounts associated with Defendant Gary D. Slavens and his email addresses, including slavensgary@gmail.com. Google LLC is also ORDERED to provide reports of all historical activities (e.g., deletion of files and folders, creation of files and folders, etc.) on the accounts of Defendant Gary D. Slavens, including, but not limited to any accounts related with the above-referenced email address(es). Google LLC shall provide such copies and reports to this court for preservation within two (2) business days of entry of this Order. The copies and reports shall not be delivered to anyone else without prior order of the court. While this Order mentions specific email addresses for Defendant Gary D. Slavens, this Order shall apply to any Google LLC accounts held by said Defendant during the past sixty (60) months. **Google LLC shall provide NO notice of the copying and reporting to**

**any of the Defendants.** Upon entry of this Order, Plaintiffs shall promptly serve this Order on the Utah registered agent of Google LLC.

IT IS FURTHER ORDERED that Google LLC shall make digital copies of all files, data, emails and other electronic communications in the Google accounts of Defendant Gary D. Slavens. All seized and copied files shall be immediately delivered to the custody of this court. These materials will be reviewed for relevance and privilege before any production to Plaintiffs is made.

IT IS FURTHER ORDERED that the furnishing of such information and assistance shall be compensated for by Plaintiffs.

### 3. Defendants

The court also specifically ORDERS Defendants to preserve all of their files (including any files in their possession, custody, or control) relating to the allegations in Plaintiffs' Complaint[29] filed with the court, specifically including any emails, paper files and records, electronic files and records, and specifically to not copy, modify, delete, or disseminate any such files or records, during the entire pendency of this matter.

IT IS FURTHER ORDERED that Defendants shall preserve evidence relating to the allegations and issues set forth in Plaintiffs' Complaint[30] and otherwise as described above.

### C. <u>Conclusion</u>

IT IS FURTHER ORDERED that Federal law enforcement officer(s) shall serve a copy of this Order and the submissions the Applicants (Plaintiffs) filed to obtain this Order upon Defendants which are identified in footnotes 1-7 above, with the Summons and Complaint, and

---

[29] Docket no. 1, filed under seal August 5, 2019.

[30] *Id*.

Order Proposing Appointment of Special Master. Plaintiffs must supply sufficient copies of these documents to the Federal law enforcement officers. Upon making service, the officers shall carry out the seizure in accordance with this Order.

IT IS SO ORDERED, this 26th day of August 2019.

BY THE COURT:

David Nuffer
United States District Judge

# EXHIBIT A

## COURT APPROVED NON-DISCLOSURE AGREEMENT
## FOR TECHNICAL EXPERT, COPYING STAFF, AND SPECIAL MASTER

I, _____ am employed by _____.

In connection with this action, I have been assigned by the Court to furnish technical or other

expert services [or copying services] [or to act as special master]. I am acting for the Court and

will not accept direction or instruction from any other person.

I have read, understand, and agree to comply with and be bound by the terms of the Ex

Parte Seizure and Evidence Preservation Order ("the Order") in the matter of Travis Lynn

Shumway, et al v. James Linn Wright, et al. (Civil Action No. 4:19-CV-00058-DN-PK), pending

in the United States District Court for the District of Utah ("the Court"). [FOR TECHNICAL

EXPERTS ONLY] I understand that my duties include seizing information from Defendants by

imaging Defendants' computers and computer devices, including making copies of any files or

data from any associated networks (collectively "the Seized Property") in accordance with the

instructions given in the Order. [FOR COPYING STAFF ONLY] I understand that my duties

include scanning paper documents seized from Defendants and delivered to me by Federal law

enforcement officers (the "Seized Property") in accordance with the instructions given in the

Order. [FOR ALL] I agree and acknowledge that the Order prohibits me from using any of the

Seized Property, including documents, files, login information, or other information, for any

purpose not appropriate or necessary to my participation in this action, or disclosing such

documents or information to any person not entitled to receive them under the terms of the

Order, or as may be further ordered by the Court. To the extent I have access to the Seized

Property, I will not in any way disclose, discuss, or exhibit such information, except by

delivering the Seized Property to the custody of the Court as instructed in the Order. I will return all materials containing the Seized Property, any copies thereof, any login information, and any notes that I have prepared relating thereto, to the Court's custody immediately after the seizure is complete. I agree to not make or take any copies or other reproductions (tangible or intangible) of the Seized Property or other information, whether for my own use or the use of another, other than as may be ordered by the Court. Absent written approval by the Defendants or the Court, I agree to keep the fact of the seizure and the existence and content of the Seized Property completely confidential from all third parties not directly involved in this case. I agree to be subject to the jurisdiction of the United States District Court for the District of Utah for purposes of this case and the enforcement of my obligations under this Non-Disclosure Agreement.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Signed by Recipient


_____
Name (printed)

Date: _____

# EXHIBIT B

## LIST OF ENTITIES AND PRINCIPALS

| Associated with Plaintiffs | Associated with Defendants |
|---|---|
| FOUR CORNERS HEALTH CARE CORP. (Utah corporation)<br>    Travis Lynn Shumway (principal)<br>    Chad L. Shumway (principal) | FOUR CORNERS HEALTH CARE—NM, LLC (New Mexico limited liability company)<br>    Gary D. Slavens (principal) |
| FOUR CORNERS HEALTHCARE, INC. (Wyoming corporation)<br>    Travis Lynn Shumway (principal)<br>    John P. Falls (principal) | FOUR BROTHERS HEALTH CARE, LLC (New Mexico limited liability company)<br>    Gary D. Slavens (principal)<br>    Audra Wright (principal) |
| MOUNTAIN WEST MEDICAL SUPPLY, LLC (Utah limited liability company)<br>    Travis Lynn Shumway (principal)<br>    Chad L. Shumway (principal) | MOUNTAIN MEDICAL SUPPLY, LLC (Utah limited liability company)<br>    Seth Clayton (current principal)<br>    Wayne Reaves (current principal)<br>    Angela Caines (current principal)<br>    Scott Reaves (current principal)<br>    James Linn Wright (former principal) |
| UNITED ENERGY WORKERS HEALTHCARE CORP. (Ohio corporation)<br>    Travis Lynn Shumway (principal)<br>    Chad L. Shumway (principal)<br>    John P. Falls (principal) | ENERGY WORKERS OF AMERICA HEALTHCARE, LLC (Utah limited liability company)<br>    ALW Healthcare Consulting, LLC (principal – controlled by James Linn Wright) |
| | ALW HEALTHCARE CONSULTING, LLC (Utah limited liability company)<br>    James Linn Wright (principal)<br>    Audra Wright (principal) |

**NOT CONTROLLED BY THESE PARTIES**
LEGACY HOME HEALTH, LLC (Utah limited liability company)
    Greg Roper (principal)
    Nathan Johns (principal)

United States District Court
for the
District of Utah
August 26, 2019

******MAILING CERTIFICATE OF THE CLERK******

RE:    Shumway et al v. Wright et al


J. Gregory Hardman
Jeffrey R. Miles
Sean James Romney
SNOW JENSEN & REECE
TONAQUINT BUSINESS PARK
912 W 1600 S STE B-200
ST GEORGE, UT 84770
via email

/s/Jeff Taylor
_____
Jeff Taylor, Deputy Clerk