IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS LYNN SHUMWAY, an individual residing in the state of Utah; CHAD L. SHUMWAY, an individual residing in the state of Utah; MOUNTAIN WEST MEDICAL SUPPLY, L.L.C., a Utah limited liability company; UNITED ENERGY WORKERS HEALTHCARE, CORP., an Ohio corporation; FOUR CORNERS HEALTH CARE CORP., a Utah corporation; and FOUR CORNERS HEALTHCARE INC., a Wyoming corporation;<br><br>Plaintiffs,<br><br>v.<br><br>JAMES LINN WRIGHT, an individual; AUDRA WRIGHT, as individual; GARY D. SLAVENS, as individual; JANE AND JOHN DOES 1-10; and DOE BUSINESS ENTITIES 1-10;<br><br>Defendants. | SPECIAL MASTER REPORT NO. 11<br><br>REPORT AND RECOMMENDATION ON THE REVIEW OF CERTAIN NULL SET DOCUMENTS SEIZED FROM DEFENDANTS JAMES LINN WRIGHT, AUDRA WRIGHT, AND GARY D. SLAVENS<br><br><br><br>Case No. 4:19-cv-00058-DN-PK<br><br>District Judge David Nuffer<br>Special Master Philip J. Favro |

Pursuant to the Court's September 4, 2019 Order Appointing Special Master ("Special Master Appointment Order"),[1] the Special Master hereby provides the following REPORT on the Special Master's review of certain null set documents seized from the computer devices, email, and cloud accounts belonging to Defendant James Linn Wright, Defendant Audra Wright, and Defendant Gary D. Slavens (collectively "Defendants") pursuant to the Court's August 26, 2019 Ex Parte Seizure Order and Evidence Preservation Order ("Seizure Order").[2]

---

[1] Docket no. 65, filed September 4, 2019.

[2] Docket no. 32, filed August 26, 2019.

1.       Under the Special Master Appointment Order, the Special Master "must locate and isolate all misappropriated trade secret information" found on Defendants' devices, email and cloud accounts, and paper records that were seized pursuant to the Seizure Order.[3] In addition, the Special Master must "facilitate the return of unrelated property and data" to Defendants and do so "with all reasonable diligence and take all appropriate measures to perform the assigned duties fairly and efficiently."[4]

2.       This REPORT deals with subject matter and issues identical to those ultimately to be decided in the above-captioned litigation. Nevertheless, it is only written in the context of the Seizure Order and the need for the most accurate and expeditious process to facilitate return of seized hardware, accounts, and data which are not trade secret information. Ultimate findings of fact and issue rulings may be different than those in this REPORT.

### I.    THE PURPOSE OF REVIEWING DEFENDANTS' NULL SETS

3.       In Special Master Report No. 3, the Special Master briefly explained the concept of a "null set."[5] A null set refers to the subset of information within an overall population of documents that did not include hits on designated search terms.[6] In discovery, a responding party may review a statistically valid sample from the null set to ascertain whether the search terms at issue inadvertently excluded relevant information from a document production.[7] If the responding party identifies relevant information in the null set random sample, it shall produce

---

[3] Docket no. 65, filed September 4, 2019.

[4] *Id*.

[5] *See* Docket no. 126, filed September 27, 2019, at ¶11.

[6] *See City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 491-92 (N.D. Ill. 2018) (describing the null set and the measures the court ordered the parties to incorporate into their electronic search protocol to ensure a reasonable review of the null set documents and that relevant information was not unreasonably excluded from the parties' respective productions).

[7] *See id*.

that information to the requesting party separately from the balance of the document production.[8] Doing so will allow the requesting party to assess the quality and nature of the production of relevant sampled information from the null set and thereby determine whether it should seek additional relevant information from the responding party that, based on the existing sampled relevant documents, will likely be found in the null set.[9]

4. The purpose underlying the review of a null set sample in discovery is equally applicable in the instant context. By conducting a review of null set samples from Defendants' seized documents, the Special Master can ascertain whether any trade secret patient lists or protected patient information belonging to Plaintiffs are in the null set. If so, the Special Master can then assess the quality and nature of such information and determine whether additional searches are required to ferret out related documents from a particular null set.

5. In Special Master Report No. 3, the Special Master indicated that he had "reviewed a statistically valid sample of documents from the null set of documents obtained from the Wrights' respective mobile devices."[10] The Special Master did not identify any documents from those null set samples reflecting Plaintiffs' trade secret patient lists, protected patient information belonging to Plaintiffs, or Plaintiffs' proprietary information.[11]

6. In Special Master Report No. 3, the Special Master indicated he would examine null set samples from the balance of the Wrights' seized documents.[12] Plaintiffs have also

---

[8] *See id*.

[9] *See id*. at 495.

[10] Docket no. 126, filed September 27, 2019, at ¶11.

[11] *See id*. at ¶14.

[12] *Id*. at ¶11 ("The Special Master will review statistically valid samples from the null sets of the data obtained from the Wrights' other devices and provide a corresponding report when such review is completed.").

3

declared their interest in having the Special Master review null set samples from Defendants' seized documents.[13]

7. Accordingly, the Special Master directed the Court's technical experts to prepare for his review statistically valid null set samples from Defendants' documents.[14] From Defendant James Linn Wright, the Court's technical experts prepared a random sample of 1,912 documents for the Special Master's review. From Defendant Gary D. Slavens, the Court's technical experts prepared a random sample of 1,767 documents for the Special Master's review.

## II. DEFENDANT JAMES LINN WRIGHT'S SAMPLED NULL SET DOCUMENTS

8. The Special Master has completed his review of the respective null sets. Regarding the sampled null set documents from Defendant James Linn Wright, the Special Master did not identify any information among those documents reflecting Plaintiffs' trade secret patient lists or protected patient information belonging to Plaintiffs. The Special Master did identify five documents that may reflect evidence of Plaintiffs' proprietary information and business transactions. The five documents include an email from Scott Reeves to Defendant Wright dated March 10, 2013 attaching a "MWM Product Inventory" list; various emails that Defendant Wright exchanged with Colleen Pritchett from AirGas USA, LLC in or about January 2013 regarding payment from "Mountain West Medical" on certain open invoices; and an email from Dan Starks of Roscoe Medical, Inc. to Defendant Wright on March 6, 2012 attaching an invoice for payment relating to certain business items.

---

[13] Docket no. 161, filed November 11, 2019.

[14] The Special Master already reviewed a statistically valid sample of null set documents from Defendant Audra Wright's mobile phone. *See* Paragraph 5, *supra*. As this was the only device the marshals seized from Defendant Audra Wright (*see* Special Master Report No. 8, docket no. 158, filed November 4, 2019, Exhibit A), the Court's technical experts did not prepare any additional null set sampled documents from Defendant Audra Wright for the Special Master's review.

9. The Special Master concludes there is no basis to proceed with any additional review of Defendant James Linn Wright's null set documents. The Special Master's charge is limited to identifying "misappropriated trade secret information."[15] No such "misappropriated trade secret information," *i.e.*, trade secret patient lists or protected patient information belonging to Plaintiffs, was located in the null set sample. Properly developed samples like the null set sample the Court's technical experts prepared in this instance are generally considered sufficient to accurately portray a larger population of information.[16] Given the foregoing, the Special Master has reasonably concluded that Defendant Wright's overall null set documents do not contain trade secret patient lists or protected patient information belonging to Plaintiffs.

10. While the Special Master did identify five documents that reflected evidence of proprietary information and business transactions, such a nominal figure—fewer than one percent (1%)—hardly justifies additional queries and searches through documents that by all appearances do not contain trade secret information. Moreover, the return of Plaintiffs' proprietary information is beyond the scope of the Special Master Appointment Order.[17] The Special Master therefore RECOMMENDS that the Court order no further searches of Defendant James Linn Wright's documents and deem the Special Master's work completed as it relates to Defendant James Linn Wright and Defendant Audra Wright.

---

[15] Docket no. 65, filed September 4, 2019.

[16] *See* The Sedona Conference Commentary on Proportionality in Electronic Discovery, 18 SEDONA CONF. J. 141, 165-67 (2017); Philip Favro, *Analytics, Metrics and Sampling: Tools Needed for Litigating in the Age of eDiscovery*, 18 DIGITAL DISCOVERY & E-EVIDENCE 170 (Bloomberg Law Mar. 15, 2018) ("Sampling involves a very simple concept: that 'a few' can adequately represent 'the many.' Sampling has been deemed a sufficient measure in a variety of different circumstances such as measuring patient health or determining how voters are leaning on a particular candidate or ballot measure.").

[17] Docket no. 65, filed September 4, 2019.

### III. DEFENDANT GARY D. SLAVENS' SAMPLED NULL SET DOCUMENTS

11. Unlike Defendant James Linn Wright, the sampled null set documents from Defendant Slavens revealed evidence reflecting protected patient information belonging to Plaintiffs. The Special Master identified 17 documents comprising emails and attachments that reflect protected patient information belonging to Plaintiffs. REV00025602, REV00025886, and REV00025887 detail contacts with Plaintiff Four Corners Health Care Corp. ("FCHC") patients and patient conditions in the form of "clinical progress notes." REV00025635—REV00025647 include an email, a zip file, and several attachments memorializing patient conditions in the form of "daily progress notes." Finally, REV00026158 is an email regarding the status of authorization of what appears to be a specific FCHC patient who is identified by name. Most of the documents described in this Paragraph have poor OCR quality or were processed without OCR.

12. The Special Master RECOMMENDS that the Court order that the 17 documents identified in Paragraph 11 that reflect Plaintiffs' protected patient information be erased from Defendant Slavens' devices and email accounts. The Special Master, however, cannot RECOMMEND at this time that an additional search should be made throughout the balance of Defendant Slavens' seized null set documents to identify additional patient records belonging to Plaintiffs given the poor or nonexistent OCR quality for many of the 17 documents at issue. Instead, the Special Master will direct the Court's technical experts to examine whether they could use alternative methods to reasonably identify other records within Defendant Slavens' seized null set documents similar to the 17 documents identified in Paragraph 11. The Special Master will thereafter submit a Report memorializing the findings of the Court's technical experts and any subsequent review of null set information the Special Master conducts.

13. The sampled null set documents from Defendant Slavens *might* include evidence reflecting Plaintiffs' trade secret patient lists. The Special Master identified six emails among the null set sample that were sent to Defendant Slavens during his tenure at FCHC. Those emails include Google Drive links to what appear to be particular FCHC documents that may list Plaintiffs' patients. For example, REV00025585 is an email from Mary Palmer to Defendant Slavens dated December 4, 2012 that includes a Google Drive link to "2011 UTAH Client BalanceSheet." REV00025680 is an email from Rebecca Carnell to Defendant Slavens dated December 7, 2012 that includes a Google Drive link to "Dead Files for Pts." REV00025687 is an email from Amy Skaggs to Defendant Slavens dated December 24, 2012 that includes a Google Drive link to what appears to be a specific FCHC patient who is identified by name. REV00025910 is an undated email from Josie Neztsosie to Defendant Slavens that includes a Google Drive link to "PATIENT LISTING." REV00025921 is an email from Rebecca Carnell to Defendant Slavens dated December 7, 2012 that includes a Google Drive link to "Staffed Patient List." REV00025989 is an email from Josie Neztsosie to Defendant Slavens dated December 9, 2014 that includes a Google Drive link to "CMs Patient Listing."

14. The Special Master cannot access the Google Drive link to confirm whether the documents mentioned in the six emails identified in Paragraph 13 are in fact Plaintiffs' trade secret patient lists. Because the Special Master cannot determine that the six emails reference Plaintiffs' trade secret patient lists, the Special Master does not RECOMMEND at this time that the six emails at issue should be eliminated from Defendant Slavens' seized devices and accounts. Instead, the Special Master will direct the Court's technical experts to examine whether they can access the Google Drive linked documents. If the linked documents can be accessed, the Special Master will determine whether the documents constitute trade secret patient

lists or otherwise reflect protected patient information. The determination of these issues will inform the Special Master whether additional searches of Defendant Slavens' null set documents are necessary.

15. The Special Master also identified 179 documents that appear to be evidence of Plaintiffs' proprietary information and business transactions. The 179 documents generally reflect information relating to FCHC payroll, employee loans, banking records, operating expenses, vendor services and products, calendar entries relating to meetings between Defendant Slavens and FCHC personnel, completed direct deposit authorization forms, completed W9 forms, and government licenses. Several of the documents described in this Paragraph have poor OCR quality or were processed without OCR.

16. The Special Master RECOMMENDS that the parties stipulate to the erasure of the 179 documents identified in Paragraph 15. A spreadsheet reflecting these 179 documents is attached to this REPORT as Exhibit A. Exhibit A identifies the 179 documents by their electronic identification number in the Relativity database, along with the page range of each document, the deletion reason, and the document's file path.

17. Nevertheless, the Special Master does not RECOMMEND that any search be made to identify Plaintiffs' proprietary information in Defendant Slavens' seized records. While the 179 documents identified in Paragraph 15 comprise a considerable portion—approximately ten percent (10%)—of the sampled null set documents, the return of Plaintiffs' proprietary information is beyond the scope of the Special Master Appointment Order.[18] Even if such a search were conducted, it could be extensive and time consuming given the likelihood that records similar to the 179 documents at issue could have comparable OCR problems.

---

[18] Docket no. 65, filed September 4, 2019.

18. Furthermore, equity requires that Defendant Slavens be permitted to gain unfettered access and use seized information unrelated to Plaintiffs' trade secret patient lists. Nearly three months have transpired since the marshals seized Defendant Slavens' devices, along with his email and cloud accounts. In the digital age—where most people rely on electronic devices and media to communicate and otherwise conduct life activities,[19] three months without access to one's primary email account and related personal cloud account is an onerous inconvenience. In an effort to "facilitate the return of unrelated property and data" to Defendant Slavens and in order "to perform the assigned duties fairly and efficiently,"[20] the Special Master RECOMMENDS that the Court order no searches be conducted of Defendant Slavens' documents for proprietary information belonging to Plaintiffs.

SIGNED this 22nd day of November, 2019.

BY THE SPECIAL MASTER:

Philip J. Favro
Special Master

---

[19] *See Riley v. California*, 573 U.S. 373, 395, 403 (2014).
[20] *Id.*

9