IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS LYNN SHUMWAY, an individual residing in the state of Utah; CHAD L. SHUMWAY, an individual residing in the state of Utah; MOUNTAIN WEST MEDICAL SUPPLY, L.L.C., a Utah limited liability company; UNITED ENERGY WORKERS HEALTHCARE, CORP., an Ohio corporation; FOUR CORNERS HEALTH CARE CORP., a Utah corporation; and FOUR CORNERS HEALTHCARE INC., a Wyoming corporation;<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES LINN WRIGHT, an individual; AUDRA WRIGHT, as individual; GARY D. SLAVENS, as individual; JANE AND JOHN DOES 1-10; and DOE BUSINESS ENTITIES 1-10;<br><br>    Defendants. | SPECIAL MASTER REPORT NO. 12<br><br>REPORT AND RECOMMENDATION ON ADDITIONAL NULL SET SEARCHES RE DOCUMENTS SEIZED FROM DEFENDANT GARY D. SLAVENS<br><br><br><br><br><br>Case No. 4:19-cv-00058-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler<br>Special Master Philip J. Favro |

Pursuant to the Court's September 4, 2019 Order Appointing Special Master ("Special Master Appointment Order"),[1] the Special Master hereby provides the following REPORT on the Special Master's review of certain null set documents seized from the computer devices, email account, and cloud account belonging to Defendant Gary D. Slavens pursuant to the Court's August 26, 2019 Ex Parte Seizure Order and Evidence Preservation Order ("Seizure Order").[2]

---

[1] Docket no. 65, filed September 4, 2019.

[2] Docket no. 32, filed August 26, 2019.

1.      Under the Special Master Appointment Order, the Special Master "must locate and isolate all misappropriated trade secret information" found on Defendants' devices, email and cloud accounts, and paper records that were seized pursuant to the Seizure Order.[3] In addition, the Special Master must "facilitate the return of unrelated property and data" to Defendants and do so "with all reasonable diligence and take all appropriate measures to perform the assigned duties fairly and efficiently."[4]

2.      This REPORT deals with subject matter and issues identical to those ultimately to be decided in the above-captioned litigation. Nevertheless, it is only written in the context of the Seizure Order and the need for the most accurate and expeditious process to facilitate return of seized hardware, accounts, and data which are not trade secret information. Ultimate findings of fact and issue rulings may be different than those in this REPORT.

3.      In Special Master Report No. 11, the Special Master identified six emails from Defendant Slavens' sampled null set documents that might include evidence reflecting Plaintiffs' trade secret patient lists: REV00025585, REV00025680, REV00025687, REV00025910, REV00025921, and REV00025989.[5] Those emails include Google Drive links to what the Special Master believed to be particular documents belonging to Plaintiff Four Corners Health Care Corp. ("FCHC") identifying Plaintiffs' patients. Because the Special Master could not access the Google Drive links to confirm whether the documents mentioned in the six emails are in fact Plaintiffs' trade secret patient lists, the Special Master directed the Court's technical experts to try and identify the linked documents referenced in the six emails.

---

[3] Docket no. 65, filed September 4, 2019.
[4] *Id*.
[5] Docket no. 165, filed November 22, 2019, at ¶13.

4. The Court's technical experts successfully identified four of the six documents. Three of those documents—REV00025687.002, REV00025910.002, and REV00025989.002—are FCHC patient lists that also identify protected patient information. REV00025687.002 is a spreadsheet that corresponds to the email from Amy Skaggs to Defendant Slavens dated December 24, 2012 (REV00025687). FCHC employee Jim Lavern appears to have authored this spreadsheet, which identifies 27 patients, along with the names of attending doctors and nurses, and other patient information. REV00025910.002 is a spreadsheet dated January 8, 2015 that corresponds to the undated email from Josie Neztsosie to Defendant Slavens (REV00025910). This spreadsheet identifies 40 patients, along with the names of attending doctors and nurses, notes about patient status, upcoming appointment dates, and several other items. REV00025989.002 is a spreadsheet dated January 7, 2015 that corresponds to the email from Josie Neztsosie to Defendant Slavens dated December 9, 2014 (REV00025989). This spreadsheet lists 13 patients, along with the names of attending doctors and nurses, and other patient information.

5. The documents identified in Paragraph Four of this REPORT reflect trade secret patient lists and protected patient information belonging to Plaintiffs. The Special Master accordingly RECOMMENDS that the Court order those three documents— REV00025687.002, REV00025910.002, and REV00025989.002—and their enclosure emails— REV00025687, REV00025910, and REV00025989—be erased from Defendant Slavens' seized devices and accounts.

6. The fourth document the Court's technical experts successfully identified—REV00025585.002—is a spreadsheet that appears to memorialize FCHC payments to various of its nurses and is referenced in the email Mary Palmer sent to Defendant Slavens dated December

4, 2012 (REV00025585). This spreadsheet and its enclosure email appear to be proprietary information belonging to Plaintiffs and the Special Master accordingly RECOMMENDS that the parties stipulate to the removal of the two documents referenced in this Paragraph from Defendant Slavens' seized devices and accounts. The Special Master also RECOMMENDS that the parties stipulate to the removal of the other two documents (REV00025680 and REV00025921) referenced in Paragraph 13 from Special Master Report No. 11 since (at a minimum) they reflect proprietary information belonging to Plaintiffs.

7. Because properly developed samples are generally considered sufficient to accurately portray a larger population of information,[6] the Special Master reasonably believes there are additional trade secret patient lists in Defendant Slavens' null set documents that may be similar to the documents referenced in Paragraphs Four and Five of this REPORT. The Special Master likewise believes there are documents reflecting additional patient information belonging to Plaintiffs in Defendant Slavens' null set documents that may be similar to the documents referenced in Paragraphs 11 and 12 of Special Master Report No. 11.[7] Accordingly, the Special Master has directed the Court's technical experts to carry out additional searches in Defendant Slavens' null set documents to find additional trade secret patient lists and protected patient information belonging to Plaintiffs. These additional searches are significant—particularly for purposes of locating evidence of additional trade secret patient lists—because the

---

[6] *See The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 18 SEDONA CONF. J. 141, 165-67 (2017); Philip Favro, *Analytics, Metrics and Sampling: Tools Needed for Litigating in the Age of eDiscovery*, 18 DIGITAL DISCOVERY & E-EVIDENCE 170 (Bloomberg Law Mar. 15, 2018) ("Sampling involves a very simple concept: that 'a few' can adequately represent 'the many.' Sampling has been deemed a sufficient measure in a variety of different circumstances such as measuring patient health or determining how voters are leaning on a particular candidate or ballot measure.").

[7] Docket no. 165, filed November 22, 2019.

Special Master does not recall seeing patient lists among Defendant Slavens' seized records in the same formats as these documents.[8]

8. To identify additional trade secret patient lists and protected patient information belonging to Plaintiffs, the Special Master has directed the Court's technical experts to undertake a variety of search queries. These queries generally include: (1) searching for emails that reflect Google Drive links; (2) conducting searches using email addresses from certain of Plaintiffs' employees and executives who communicated with Defendant Slavens regarding patient lists and patient information; and (3) searching for documents similar to REV00025687.002, REV00025910.002, and REV00025989.002.

9. Noticeably absent from the search queries listed in Paragraph Eight of this REPORT is the use of search terms. Given the OCR challenges identified in Special Master Report No. 11, the Special Master believes that search terms would yield under-inclusive search results, meaning relevant documents would be excluded from the search results because they did not include the precise word or set of words encompassed by the search term. While poor OCR quality can lead to under-inclusive search results, search terms have several known limitations (including being both under-inclusive and over-inclusive) that often reduce their effectiveness if not supplemented with other search queries.[9]

10. Finally, the Special Master observes that the first search mentioned in Paragraph Eight of this REPORT is necessary because FCHC likely cannot disable access to the Google Drive links referenced in its employee emails to Defendant Slavens. Because FCHC did not use a corporate email system that would have limited the distribution of its patient lists or protected

---

[8] *See* REV00025687.002, REV00025910.002, and REV00025989.002.

[9] *See*, *e.g.*, *William A. Gross Construction, Inc. v. American Manufacturers Mutual Insurance Company*, 256 F.R.D. 134, 135-36 (S.D.N.Y. 2009).

patient information to employee email addresses, FCHC employees like Defendant Slavens and others were apparently able to use their personal email addresses and personal cloud accounts to store and send such information.[10] As a result, it is unlikely that FCHC can reasonably restrict, track, or otherwise control certain of Plaintiffs' trade secret patient lists and protected patient information.

SIGNED this 25th day of November, 2019.

BY THE SPECIAL MASTER:

_____
Philip J. Favro
Special Master

---

[10] Docket no. 165, filed November 22, 2019, at ¶13.