# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS LYNN SHUMWAY, an individual residing in the state of Utah; CHAD L. SHUMWAY, an individual residing in the state of Utah; MOUNTAIN WEST MEDICAL SUPPLY, L.L.C., a Utah limited liability company; UNITED ENERGY WORKERS HEALTHCARE, CORP., an Ohio corporation; FOUR CORNERS HEALTH CARE CORP., a Utah corporation; and FOUR CORNERS HEALTHCARE INC., a Wyoming corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>JAMES LINN WRIGHT, an individual; AUDRA WRIGHT, an individual; GARY D. SLAVENS, an individual; JANE AND JOHN DOES 1-10; and DOE BUSINESS ENTITIES 1-10;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT WITH DEFENDANT GARY D. SLAVENS AND ENTRY OF PERMANENT INJUNCTION AGAINST GARY D. SLAVENS**<br><br>Case No.: 4:19-cv-00058-DN-PK<br><br>District Judge David Nuffer<br><br>Special Master Philip Favro |

Plaintiffs Travis Lynn Shumway, Chad L. Shumway, Mountain West Medical Supply, LLC, United Energy Workers Healthcare, Corp.; Four Corners Health Care Corp., a Utah corporation; and Four Corners Healthcare, Inc., a Wyoming corporation (collectively "Plaintiffs") moved to enforce a written settlement agreement (the "Settlement Agreement") with Defendant Gary D. Slavens ("Dr. Slavens") (the "Motion to Enforce Settlement Agreement").[1]

Plaintiffs' Motion to Enforce Settlement Agreement is GRANTED.

---

[1] Plaintiffs' Motion to Enforce Settlement Agreement with Defendant Gary D. Slavens, docket no. 236, filed May 19, 2020. No opposition was filed to the Motion to Enforce Settlement Agreement.

1

## INTRODUCTION

Plaintiffs request that the Settlement Agreement be enforced in accordance with its terms and require that the parties perform the acts specified therein. Dr. Slavens has acknowledged the parties' Settlement Agreement in sworn testimony in court, in his filings and other communications with the Court, and in communications with Plaintiffs' counsel. The Settlement Agreement has been reduced to a writing that all parties agree represents their settlement. However, for unknown reasons, Dr. Slavens refuses to sign the Settlement Agreement, inclusive of its related documents, or otherwise communicate with Plaintiffs' counsel.

## BACKGROUND

1. On March 6, 2020, at a show cause hearing Dr. Slavens testified under oath.[2]

2. During the hearing, Dr. Slavens testified as follows:

Dr. Slavens: Well, we had a settlement agreement January 29th. He sent a proposal. I sent a proposal back to him saying, yeah, I agree to this.[3]

3. In attorney J. Gregory Hardman's January 29, 2020 email to Dr. Slavens, Mr. Hardman detailed the terms of a settlement agreement.[4]

4. Specifically, Mr. Hardman detailed the following terms:

   a. Dr. Slavens shall agree to a three-year non-compete in the states of Utah, New Mexico, Arizona, Colorado, and Wyoming.
   b. Plaintiffs will dismiss and permanently release the claims asserted against Dr. Slavens.
   c. Each party will bear their own attorney fees and costs.
   d. Dr. Slavens will stipulate that all paper and electronic documents, records, and emails identified by the Special Master which fall into the following categories

---

[2] *See* Excerpts from transcript of Show Cause Hearing, Exhibit A to Motion to Enforce Settlement Agreement, docket no. 236-1.
[3] *Id.* at 11:12-14.
[4] *See* Email Chain between J. Gregory Hardman and Dr. Slavens, dated January 28-31, 2020, Exhibit B to Motion to Enforce Settlement, docket no. 236-2; *see also* Declaration of J. Gregory Hardman ¶ 3, docket no. 237, filed May 19, 2020.

    shall be permanently destroyed and/or deleted from his electronic devices and email accounts:
     i. All patient lists that reflect names set forth in Plaintiffs' patient lists;
     ii. All records containing protected patient information belonging to Plaintiffs; and
     iii. All proprietary information belonging to Plaintiffs, including but not limited to company policies and procedures, forms, manuals, written correspondence, business plans, company operating agreements, bank records, employee social security numbers, employee bank account numbers, accounts receivables, profit and loss statements, balance sheets, and other confidential and sensitive information (specifically everything recommended for deletion by the Special Master in Reports 8, 10, 11, 12, 14, 16 and 17).
  e. Dr. Slavens will file with the Court a sworn certification that he does not retain possession of any copies of the documents, records, or emails in paragraph d, above.
  f. Dr. Slavens will be permanently enjoined from contacting any of the patients identified in the patient lists described in paragraph d above.
  g. The parties will dismiss their claims against each other in the pending federal lawsuit with prejudice.[5]

5.  Dr. Slavens agreed to the terms in Mr. Hardman's email, stating, "yes if you do all the paper work for it."[6]

6.  Dr. Slavens further acknowledged his agreement to the settlement in a text to the Court on or about March 4, 2020, stating that "[w]e agreed on a settlement a month ago."[7]

7.  In his response to Plaintiffs' Motion for Order of Contempt against Gary Slavens and Award of Attorney Fees and Costs, Dr. Slavens again acknowledged that he agreed to a settlement agreement and that the terms of the settlement were contained in an email from Plaintiffs' counsel dated March 27, 2020.[8]

---

[5] *Id.*
[6] *Id. at* Exhibit B.
[7] *See* Text Message from Dr. Slavens to Court (dated March 4, 2020), docket no. 200, lodged March 4, 2020.
[8] Response to the Plaintiffs' Motion for Order of Contempt Against Gary Slavens and Award of Attorney Fees and Costs (the "Response) at 2-3, docket no. 218, filed April 17, 2020; *see also* Exhibit C to Response.

3

8. The settlement documents attached as PDFs to Plaintiffs' counsel's March 27, 2020 email are also attached as Exhibit C to Plaintiffs' Motion to Enforce Settlement Agreement,[9] consisting of (1) the Settlement, Waiver, and Release Agreement, (2) the Certification of Gary D. Slavens, (3) the Stipulated Motion for Permanent Injunction Against Gary D. Slavens, and (4) the Permanent Injunction Against Gary D. Slavens.[10]

9. In his March 6, 2020 testimony, Dr. Slavens further testified that although he agreed to the terms of the Agreement, he was not going to sign it until he received his computers, email, and cloud accounts were returned to him.[11]

10. On March 24, 2020, an order required that all of Dr. Slavens' devices and accounts in the possession of the court-appointed technical expert be mailed to Dr. Slavens along with relevant login credentials.[12]

11. Dr. Slavens' devices and accounts were returned to him on March 27, 2020,[13] the same date that Plaintiffs' counsel re-sent the written Settlement Agreement to Dr. Slavens for his signature.[14]

12. Dr. Slavens has not returned a signed Settlement Agreement, inclusive of its related documents, to Plaintiffs and has not responded to communications and questions from Plaintiffs' counsel regarding Dr. Slavens' signing of the Settlement Agreement.[15]

---

[9] Motion to Enforce Settlement Agreement, supra note 1.
[10] *See* Exhibit C to Plaintiffs' Motion to Enforce Settlement Agreement, docket no. 236-3.
[11] *See* Exhibit A to Plaintiffs' Motion to Enforce Settlement Agreement at 11:12-22, docket no. 236-1.
[12] *See* Order re: Return of Seized Property to Defendant Gary D. Slavens, ¶¶ 3-4, docket no. 210, filed March 24, 2020.
[13] *See* Digital Forensic Examination Report §3(b), docket no. 231, lodged May 15, 2020.
[14] *See* Response, supra note 8, at 2-3 & Exhibit C thereto, docket no. 221, lodged April 21, 2020.
[15] Declaration of J. Gregory Hardman ¶¶ 6-7, supra note 4.

## DISCUSSION

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."[16] "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law."[17] "Under Utah law, courts will enforce settlement agreements 'if the record establishes a binding agreement and the excuse for nonperformance is comparatively unsubstantial.'"[18] "It is of no legal consequence that the parties have not signed a settlement agreement."[19]

Similarly, "[i]f a written agreement is intended to memorialize an oral contract, a subsequent failure to execute the written document does not nullify the oral contract."[20] "Parties have no right to welch on a settlement deal during the sometimes substantial period between when the deal is struck and when all necessary signatures can be garnered on a stipulation."[21] Indeed, even where a writing is required, "a writing via various electronic media, such as an email exchange between the parties in which they agree to particular provisions or a recording in which the parties affirmatively state what constitutes their agreement, would satisfy this requirement."[22] Where there is a settlement agreement memorialized in writing, a court may enforce the terms of the settlement in accordance with the terms of the agreement.[23] This

---

[16] *United States v. Hardage*, 982 F.2d 1491, 1496–97 (10th Cir. 1993).
[17] *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir.2004).
[18] *Nature's Sunshine Prod. v. Sunrider Corp.*, 511 F. App'x 710, 714 (10th Cir. 2013) (quoting *First Nat'l Bank v. Barbara Jensen Interiors, Inc.,* 781 P.2d 478, 479 (Utah Ct.App.1989)).
[19] *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584–85 (Utah Ct. App. 1993).
[20] *Id.* (internal citation and quotation marks omitted).
[21] *Id.* (internal citation and quotation marks omitted).
[22] *Nature's Sunshine Prod., Inc. v. Sunrider Corp.*, No. 2:09-CV-896, 2011 WL 5881767, at *3 (D. Utah Nov. 23, 2011) (quoting *Reese v. Tingey Const.*, 2008 UT 7 ¶ 15 n. 6, 177 P.3d 605).
[23] *Borandi v. USAA Cas. Ins. Co.*, No. 2:13-CV-141 TS, 2015 WL 998107, at *2 (D. Utah Mar. 5, 2015).

includes by entering orders requiring parties to comply with the specific terms of the agreement.[24]

The facts are simple and straightforward. Dr. Slavens has acknowledged under oath that the parties have settled. The Settlement Agreement was memorialized first in an email exchange where Plaintiffs detailed specific terms and Dr. Slavens agreed to all of these terms in a responsive written communication (i.e., text message). The Settlement Agreement was further memorialized in formal documents sent to Dr. Slavens, which Dr. Slavens has acknowledged accurately represent the agreement between the parties. Indeed, not only has Dr. Slavens acknowledged the Settlement Agreement, he has referred to the Settlement Agreement as an excuse for some of his conduct during the course of this litigation.[25]

Based on the foregoing, there is a binding and enforceable settlement—namely the Settlement Agreement.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1.  All documents, records, emails and accounts identified in Special Master Reports 8,[26] 10,[27] 11,[28] 12,[29] 14,[30] 16[31] and 17,[32] inclusive of all exhibits attached to these Reports, which were identified by the Special Master as patient lists, patient records and proprietary information

---

[24] See *Black Pearl Techs., LLC v. 3502031 Canada Inc.*, No. 2:06CV285DAK, 2007 WL 840103, at *1–2 (D. Utah Mar. 15, 2007) (enforcing a settlement agreement by requiring a party to transfer and assign a domain name and cease use of a mark).
[25] See Response, supra note 8.
[26] Docket no. 158, filed November 4, 2019.
[27] Docket no. 164, filed November 19, 2019.
[28] Docket no. 165, filed November 22, 2019.
[29] Docket no. 168, filed November 25, 2019.
[30] Docket no. 177, filed December 17, 2019.
[31] Docket no. 184, filed January 13, 2020.
[32] Docket no. 189, filed January 28, 2020.

belonging to Plaintiffs shall be permanently erased from Dr. Slavens' electronic devices and email accounts. This order was previously carried out pursuant to Orders re: Deletion of Information Seized from Computers and Accounts of Gary D. Slavens, which orders were entered December 16, 2019 (Special Master Reports Nos. 8, 10, and 11),[33] January 8, 2020 (Special Master Report No. 12),[34] January 29, 2020 (Special Master Report No. 14),[35] January 29, 2020 (Special Master Report No. 16),[36] and February 10, 2020 (Special Master Report No. 17).[37]

2.  The paper documents previously seized from Dr. Slavens will be shredded and the court-appointed technical assistants, Xact Data Discovery, Orange Document Services, or both, as the case may be, will thereafter dispose of the shredded paper documents.

3.  Dr. Slavens shall within ten (10) calendar days following entry of this permanent injunction and order file a sworn certification that he does not retain possession of, and has not since the commencement of this action transferred or delivered to any other person or entity, any electronic or paper copies of the documents, records, or emails identified in Special Master Reports 8, 10, 11, 12, 14, 16 and 17 as patient lists, patient records and proprietary information that were recommended for erasure by the Special Master. Should Dr. Slavens fail to timely file the sworn certification required by this paragraph 3, he will be deemed to have done so; and should he later be discovered to have transferred or delivered any electronic or paper copies of the documents, records, or emails identified in Special Master Reports 8, 10, 11, 12, 14, 16 and

---

[33] Docket no. 175, filed December 16, 2019.
[34] Docket no. 181, filed January 8, 2020.
[35] Docket no. 191, filed January 29, 2020.
[36] Docket no. 192, filed January 29, 2020.
[37] Docket no. 195, filed February 10, 2020.

17 as patient lists, patient records and proprietary information, he may be held in contempt of this Court.

4. Dr. Slavens is hereby permanently enjoined from contacting any of the current and former patients, employees, and contractors identified in Special Master Reports 8, 10, 11, 12, 14, 16 and 17 as identified in the patient lists, patient records and proprietary information that was recommended for erasure by the Special Master.

5. Dr. Slavens is barred for the period of three (3) years, commencing on the day following entry of this Memorandum Decision and Order, from being an employee, owner or consultant of or to have any association with or ownership interest in, any company, organization or operation that is engaged to any degree in the businesses of providing home health care services or durable medical equipment to beneficiaries, inclusive of their family members and heirs, of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), the Radiation Exposure Compensation Act ("RECA") or other benefits program administered by the U.S. Department of Labor, within or providing services to persons residing within the states of Utah, Colorado, New Mexico, Arizona and Wyoming.

Signed July 17, 2020.

BY THE COURT

_____
David Nuffer
United States District Judge